## Big Black Creek Improvement Company *versus* The Commonwealth.

1. The Act of April 24th 1874, provides, that corporations doing business in this Commonwealth, and possessing " the corporate right or privilege to mine or to purchase and sell coal," shall report semi-annually to the auditor general the number of tons mined by such company, and also the number of tons mined upon the company's land by any unincorporated association, partnership or individual, under any lease or contract, and shall pay a tax thereon.   The Big Black Creek Improvement Company held extensive coal lands which it leased to others to be worked, but the corporation itself, by its charter, was expressly prohibited from mining.   *Held*, that it is liable to the tax under the above act.

2. The object of the act is to reach every corporation which purchases and sells coal, which mines coal on its own land or land it has leased, or which causes coal to be mined under a lease, contract, grant or mining privilege, to unincorporated persons on property that it owns, or has a coal privilege or interest therein.

3. Statutes are to be construed so as may best effectuate the intention of the makers, which sometimes may be collected from the cause or occasion of passing the statute, and where discovered it ought to be followed with judgment and discretion in the construction though the construction may seem contrary to the letter of the statute.

May 18th 1880.   Before MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.   SHARSWOOD, C. J., and GREEN, J., absent.

Error to the Court of Common Pleas of *Dauphin county :* Of May Term 1880, No. 189.

This was an appeal to the Court of Common Pleas of Dauphin county by the Big Black Creek Improvement Company, from the settlement of an account against them by the accounting officers of the Commonwealth.   The appeal was filed July 7th 1879.

The Big Black Creek Improvement Company was incorporated on the 12th of April 1855.   The company was authorized to hold very considerable quantities of coal land in certain townships in Luzerne county, and to prepare the same to be worked and leased ; the veins to be opened, schutes, breakers and screens to be erected, and had conferred on it the powers usually conferred on corporations, with all the rights, powers and privileges, and subject to all the restrictions, provisions and liabilities conferred and imposed upon the Swatara Company by the 2d, 3d and 4th sections of the act incorporating the same, approved the 6th day of March 1849.

The Swatara Improvement Company has the usual powers conferred on coal companies, except that by the 4th section of the act it is provided that this company shall not have mining or banking privileges.   A supplement was passed on the 2d day of April 1860, to the charter of the Rausch Creek Company, by which it had conferred on it many additional privileges, but was again deprived of any mining or banking privileges with the addition that the cap-

ital stock or dividends of the company shall not be taxable. On the 3d day of April 1863, a supplement was passed to the Big Black Creek Improvement Company, giving it all the privileges and subjecting it to all the restrictions and provisions contained in the Act to incorporate the Rausch Creek Improvement Company, approved the 2d day of April 1860.

The company, when called on from the state department, made report (under protest) on the 31st of January 1879, of the number of tons of coal mined on its lands by unincorporated associations, partnerships or individuals, but averred that it is not subject to pay taxes on account of such mining.

The claims of the Commonwealth for the taxes in these cases are under the seventh section of " An act for the taxation of corporations," approved the 24th of April 1874, Pamph. L. 71, which is as follows :

" That every company incorporated or organized by or under any law of this Commonwealth, or incorporated or organized by or under any law of any other state, and doing business in this Commonwealth, which possesses the corporate right or privilege to mine or to purchase and sell coal, shall semi-annually, upon the first days of July and January, in each and every year, make report, under oath or affirmation, to the auditor-general, of the number of tons of coal mined during the six months preceding the said first day of July and January, by such company, and also of the number of tons of coal that shall be mined by any unincorporated association, partnership or individual, under any lease, contract, grant or mining privilege, upon the property of which the company making such report is the owner or lessee, or has any mining or coal privileges or interest therein, and also the number of tons not mined as aforesaid, which shall have been purchased during the same period by the said company, and shall pay into the treasury of the Commonwealth an additional tax on its corporate franchises, created by or used within this Commonwealth, at the rate of three cents upon each and every ton of two thousand two hundred and forty pounds of coal so mined or purchased as aforesaid : Provided, That the amount of coal consumed in the transaction of its business by any such company, shall not be included in its return : And provided further, That said tax shall not be payable more than once in respect to the same ton of coal : And provided also, That if any such company shall neglect or refuse for a period of thirty days, after such tax becomes due, to make said return, or to pay the same, the amount thereof, with an addition of ten per centum thereto, shall be collected for the use of the Commonwealth, as other taxes are recoverable by law from the said companies."

[Big Black Creek Improvement Co. *v.* Commonwealth.]

Under this section the auditor-general and state treasurer settled an account against the company, charging it with a tax of three cents on each ton of coal mined by lessees on the company's lands, as appeared by the company's report thereof, showing a balance of $1744.26 due the Commonwealth. When the report was asked for, the company protested against their liability, but the account was nevertheless settled against it. It then appealed to the Common Pleas of Dauphin county. Its specifications of objection were, 1. That the companies are not coal companies. 2. Because the tax is claimed on coal which the companies did not mine nor purchase and sell. 3. Because the companies have not, and do not possess the corporate right or privilege to mine, or to purchase and sell coal, and, therefore, not liable to a tax on their corporate franchises, created by or used within this Commonwealth, of three cents per ton on coal, under the 7th section of the Act of April 24th 1874, under which said account was settled.

The cases were tried before Pearson, P. J., without a jury, in pursuance of agreements filed under the Act of April 22d 1874, and the facts found by him with reference to the acts of incorporation as above stated.

In an opinion the court, inter alia, said : .

"Although interdicted from the privilege of mining or dealing in coal, in the ordinary method of buying, selling or mining, it is impossible to doubt from the charter of this company that it purchased its large body of land in the coal regions with the view of making profit out of the coal on its land. It is to cause the same to be leased and worked, the veins to be opened, schutes and breakers to be built, screens to be erected, &c., and do the various acts usually attendant on starting coal works. After this preparation the company was not to work the mines, but it is very clear that they were to be let out to others. The company could neither buy nor sell, but could be paid a royalty for each ton mined and received by its tenants.

"It is impossible to doubt but that the coal was mined on the land of this company by unincorporated associations, partnerships or individuals within the very letter of the Act of 1874, as already cited. Although not coming within any Act of Assembly in force when this company was incorporated, yet there was no provision in the charter prohibiting a tax law to be passed imposing a tax on the coal mined by others on this company's land and holding it responsible for the tax thereon, and this has been done in clear language.

"The only remaining question arises under the Act of the 2d day of April 1860, incorporating the Rausch Creek Company. Is this tax now claimed imposed on the capital stock or dividends of the company ? It is certainly distinguishable from a tax on capital stock. This is on the coal mined by others by the ton. It is not

what is known in this state as a tax on 'capital stock,' nor is it what we generally understand by a tax on 'dividends.' That has a well-settled meaning in Pennsylvania. If the power of taxation is to be taken away from the state it should be by clear and unequivocal expressions, not by mere implication. Another reason exists. The charter of the Rausch Creek Company was granted after the amendment to the Constitution in 1857, which secures to the legislature the power to alter, revoke or annul any charter of incorporation whenever in their opinion it shall be injurious to the citizens. It might be well said that the prohibition from taxing one company equally with another was unfair, and should not be practised or tolerated. * * * On the whole we are clearly of the opinion that this corporation is subject to taxation in the mode imposed by the accounting department and for the sum fixed by it."

The court then entered judgment for the Commonwealth for $1984.06. The company took this writ, and alleged that the court erred in this entry of judgment.

*George Lear*, for plaintiff in error.—The question in these cases involves the proper construction of the seventh section of the Act of April 24th 1874. The error of the court is in holding that all corporations owning land upon which unincorporated associations, partnerships and individuals mine coal, are liable to a tax of three cents on each ton of coal mined on the land; and that the purchase of land, preparing it for mining and leasing it for a royalty constitute the purchase and sale of coal.

The fourth section of the act incorporating the Rausch Creek Company provides that the company shall not have mining or banking privileges. The corporate right to mine is certainly not given where it is expressly withheld. Corporate rights are not to be presumed or implied. Without the corporate right to mine or to purchase and sell coal the company is not liable under the Act of 1874. Mining is expressly prohibited; to purchase or to sell is not sufficient; it must do both.

The purchase of land containing coal, and leasing the same to an unincorporated association, partnership or individual, or to a corporation, to mine the coal upon it at a royalty to be paid to the owner, is not mining or its equivalent. To purchase land containing coal, and to sell it as a product separated from the land would imply the right to mine, which is expressly denied in the charters. Of course, it cannot mean that to purchase the land and sell it again, with coal beneath the surface, is the right to purchase and sell coal; for that is no more the purchase and sale of coal than it is the purchase and sale of timber, if there be trees growing on the land. To purchase the land, and lease the veins at a rent or royalty to lessees who mine the coal and sell it, do not constitute the sale and disposal of the products of the land within the mean-

ing of the charters. This tax is on the franchise. The corporate right to mine and to purchase and sell coal constitutes a corporation of a certain class, and without being in that class the claim to the tax cannot be sustained: Kittanning Coal Co. *v.* Commonwealth, 29 P. F. Smith 100. This company does not come within the class, and is not described in the act imposing the tax.

*Lyman D. Gilbert*, Deputy Attorney-General, and *Henry W. Palmer*, Attorney-General, for the Commonwealth.—The seventh section of the Act of 1874, has already received a judicial construction in the case of the Kittanning Coal Company *v.* Commonwealth, *supra*. As there decided, the tax in dispute was imposed upon the corporate franchise of corporations having the privilege to mine or to purchase and sell coal. The intention of this section was to tax corporations in respect to the coal mined; or, if no mining was done by them, in respect to the coal they trafficked in. The coal itself is untaxed, and its amount is computed for no purpose except to measure the extent to which the tax is levied upon the corporate franchise. It is true this corporation does not have mining privileges, but mining corporations are only one of the classes of corporations taxed by that section. Another class that is there taxed, consists of those having corporate rights to make merchandise of coal, and to this class this company belongs. It has an undoubted corporate privilege within certain limits to buy and sell coal lands; to prove and open veins of coal, to prepare the same to be worked and leased and lease them. The kind of lease it can thus make depends entirely upon its discretion. It may be for a fixed sum, or it may be as in this instance for a royalty paid upon each ton of coal mined by the lessee. But in either event the lease so made amounts to a sale of coal, and the lessor, in the contemplation of this tax law, becomes a vendor of the coal : Lykens Valley Coal Co. *v.* Dock, 12 P. F. Smith 238; Tiley *v.* Moyers, 7 Wright 404; Appeal of Stoughton et al., 7 Norris 201.

The coal, in contemplation of law, is detached from the real estate when the right to the coal has been parted with, and is sold as coal, and not as coal land. Where the owner of the coal land has sold the right to take all the coal that is in his land, and retained the land itself, the owner of the land and the owner of the coal are each taxable according to their several interests : Armstrong *v.* Caldwell, 3 P. F. Smith 284; Logan *v.* County, 5 Casey 373. The Act of 24th April 1874, intended to tax corporations trafficking in coal in respect to all coal mined upon their lands by " any unincorported association, partnership or individual, under any lease, contract, grant or mining privilege" from the corporation, and this corporation has the corporate right to traffic in coal within the meaning of that tax section.

[Big Black Creek Improvement Co. *v.* Commonwealth.]

Mr. Justice TRUNKEY delivered the opinion of the court, May 31st 1880.

Upon all corporations, having the right to mine, or to purchase and sell coal, the Act of 1874 imposed a tax of three cents for every ton mined or purchased, and required returns of the quantity of such coal to be made by the corporations to the auditor general; and also like tax on "the number of tons of coal that shall be mined by any unincorporated association, partnership or individual, under any lease, contract, grant or mining privilege, upon the property of which the company making such report is the owner or lessee, or has any mining or coal privileges or interest therein." No unincorporated person, or association of persons, mining, or purchasing and selling coal, is liable to the tax. The object of the law is to reach every corporation which purchases and sells coal, which mines coal on its own land or land it has leased, or which causes coal to be mined under a lease, contract, grant or mining privilege, to unincorporated persons on property that it owns, or has a coal privilege or interest therein.

This plaintiff in error has extensive coal interests. It has the corporate right to own coal lands, to open the veins of coal, to erect all proper buildings, machinery and improvements for mining, to construct a railroad, and when the veins are prepared to be worked, it may lease them on such terms as may be agreed between it and its lessees. It leased for a stipulated sum for each ton mined. Having no mining privilege, nor right to purchase and sell coal, "in the ordinary method of buying, selling or mining," in a critical argument, it claims non-liability to the tax, because the literal meaning of the words employed in the first clause of the seventh section, do not require it to make returns to the auditor general. But it is an owner of coal lands, with corporate coal privileges and interests therein, which it leased to natural persons for mining, and we cannot doubt that it is plainly within the intendment of the statute. Here, if anywhere, the rule should apply that "statutes are to be construed so as may best effectuate the intention of the makers, which sometimes may be collected from the cause or occasion of passing the statute, and, when discovered, it ought to be followed with judgment and discretion in the construction, though that construction may seem contrary to the letter of the statute."

We think the learned judge of the Common Pleas was clearly right in his conclusions and on his opinion

Judgment affirmed.