## GEORGIA PENITENTIARY COMPANY, No. 2, *et al. vs.* NELMS, principal keeper, *et al.*

[Jackson, Chief Justice, being related to some of the parties, did not preside in this case. Judge Speer, of the Flint circuit, was appointed by the governor to preside in his stead.]

1. While it is the privilege and right of counsel to ask permission to review and reverse a decision of this court, though unanimous, still the judgment of the court rendered in the case reviewed is not affected thereby. The judgment of affirmance or reversal by this court of the judgment of the court below is not the subject of review by this court.

2. Where an act of the general assembly contains the following pro-
vision: "Before any disposition is made of the convicts, the gov-
ernor is authorized to furnish to the directors of the Marietta and
North Georgia Railroad Company, upon their application for the
same, two hundred and fifty convicts, or as many thereof as they
might desire, without charge, for the space of three years; upon their
giving satisfactory obligations to feed, clothe and provide for the
same, under such regulations as the governor might require for their
safe keeping and proper care:

*Held,* that the same is not such a "donation or gratuity" by the state,
within the meaning of the constitution, as requires that such act
should have been passed by a majority of two-thirds of each branch
of the general assembly, and the yeas and nays on its passage to be
entered on the journals thereof.

Practice in the Supreme Court. Laws. Constitutional
law. Before Judge LESTER. Cobb County. At Cham-
bers. April 8, 1880.

Reported in the decision.

JAMES M. SMITH; HOPKINS & GLENN, for plaintiffs in
error.

McCAY & ABBOTT; A. JOHNSON, for defendants.

SPEER, Judge.

This is a bill filed by plaintiffs in error seeking to enjoin
John W. Nelms, as principal keeper of the penitentiary,
from delivering to the Marietta and North Georgia Rail-
road Company, and said company from receiving, any
convicts under a resolution of the general assembly of
1879, "which directed the principal keeper of the peni-
tentiary to furnish the Marietta and North Georgia Rail-
road Company two hundred and fifty convicts upon cer-
tain conditions therein specified."

The complainants allege that by a contract dated
21st June, 1876, the state leased to them all of the convicts
(except a certain proportion that was to go to Peniten-

tiary Company No. 1.) for twenty years from and after the first day of April, 1879. The contract of lease of complainants as well as the claim of the two hundred and fifty convicts by the Marietta and North Georgia Railroad Company both are under the authority of and derived from an act of the general assembly approved twenty-fifth day of February, 1876, entitled "an act to regulate the leasing out of penitentiary convicts by the governor, and authorizing him to make contracts in relation thereto."

1. The right of the complainants against the defendants seeking to restrain the delivering by the one, and the receiving by the other, of the two hundred and fifty convicts, under the act of 1876, as will appear from the *original* bill, answers, proofs, etc., was before the court at the February term, 1880, and the judgment of the court below refusing the injunction as to the case *then* made, was affirmed by this court. See case *Georgia Penitentiary Company No. 2, et al. vs. John W. Nelms, keeper, etc., et al.,* pamphlet decisions of supreme court, February term, 1880, p. 14.

In the argument, counsel for plaintiffs in error asked leave to review and reverse the decision made in this case at the last term between these parties. Section 217 of the Code provides that, "A decision concurred in by three judges cannot be reversed or materially changed except by a full bench, and then after argument had, in which the decision by permission of the court is expressly questioned and reviewed, and after such argument the court in its decision shall state distinctly whether it affirms, or reverses or changes such decision." To review and reverse a *decision* made is a very different thing from reviewing and reversing a *judgment* that has been rendered when the case and parties are the same.

In *Russell vs. Slaton,* 38 *Ga.,* 195, the court says: "The judgment of the supreme court in a case is a judgment affirming or reversing the judgment below, and is *final* and *conclusive* between the parties on the matters involved

in that trial.   The *opinion* of the court on the law of the case does not stand on the same footing, and may be over-ruled after argument had, if shown to be erroneous even if unanimous.   The judgment of affirmance or reversal by this court of the judgment of the court below is *not the subject* of *review*.   This is a court of last resort and it would be extraordinary law indeed that would justify such review."   38 *Ga.*, 196.

We have heard the argument of counsel for the plaintiffs in error seeking to reverse the decision pronounced in this case made at the last term of this court, but the reversing of the *decision* could not avail *them* as the *judgment* then pronounced between these parties would be unaffected by such reversal.   The judgment then pronounced is final and conclusive between these parties as to the questions involved.

2. In considering and reviewing the *decision* then pronounced, we are satisfied the same should be sustained and affirmed.   Since the decision had at the last term, complainants have amended their bill and on said amendment applied for an injunction *again*, seeking to restrain the turning over of the two hundred and fifty convicts to the Marietta and North Georgia Railroad.   In said amendment they allege and charge as follows: "That the act of 1876 referred to in the original bill contained this clause: "Before any disposition is made of the convicts as contemplated under the provisions of this act, his excellency, the governor, shall be authorized to furnish the directors of the Marietta and North Georgia Railroad Company, upon their application for the same, two hundred and fifty convicts, or so many thereof as they may desire, without charge, for the space of three years, upon their giving satisfactory obligations to feed, clothe, and provide for the same under such regulations as his excellency, the governor, may require for the safe keeping and proper care of said convicts."

"But said convicts shall be used by said railroad com-

pany exclusively for the benefit of their railroad, and for violation of this condition the governor may vacate the lease."

Under this clause, it is alleged the defendants claimed the right to have the two hundred and fifty convicts for three years from the first day of April, 1879. Complainants further charge that under this clause of the act of 1876, there was granted to the Marietta and North Georgia Railroad Company a "*donation*" or "*gratuity*," and that the same was illegal and void in this, that the constitution of the state required for its passage a concurrence of two-thirds of each branch of the general assembly, and that the yeas and nays on the passage thereof should be entered on the journals of each house. It is alleged that this act did not pass by a two-thirds vote; neither were the yeas and nays on its passage recorded. They allege the same is also true of the act of February 28th, 1876, and of the resolution of the legislature of the last session referring to these convicts, and insist no rights could be acquired by defendants under any of these acts, but they are null and void. This is the main question made by the amended bill, and the refusal of the court below to grant an injunction on this ground is brought here for review.

The second paragraph, sixth section of the constitution of 1868 is in the following words: "No vote, resolution or order shall pass granting a donation or gratuity in favor of any person except by the concurrence of two-thirds of each branch of the general assembly, nor by any vote to a sectarian corporation or association."

Is transferring to the Marietta and North Georgia Railroad Company the two hundred and fifty convicts for three years from the first day of April, 1879, without charge, upon such terms and conditions as are contained in the act of 1876, such a "*donation*" or "*gratuity*" as would require the same to be passed by a concurrent vote of two-thirds of each branch of the general assembly? In construing any portion of the constitution, courts give to

the words of that instrument involved in the construction their *legal definition.*

Donation is defined by Bouvier to be "the act by which the owner of a thing voluntarily transfers the *title* and possession of the same *without any consideration.*" Bouvier's L. D. It certainly will not be insisted that the state at the date of this act had the *title* to these convicts. They were persons who by reason of their violation of the penal laws and their trial and conviction therefor, had forfeited, for a certain time, their liberty or right of loco-motion, and who were under the law subject to confine-ment and labor for a specified term.

In the exercise of its sovereign rights for the purpose of preserving the peace of society and protecting the rights of both person and property, the penitentiary sys-tem of punishment was established. It is a *part* of that *police system* necessary, as our law makers thought, to pre-serve order, peace and the security of society. The sev-eral *terms* of these convicts fixed by the judgments of the courts under authority of law, simply subjects their *persons* to confinement, and to such labor as the authority may lawfully designate. The *sentence* of the courts under a *violated law* confers upon the state *this power, no more.* The power to restrain their liberty of locomotion, and to compel labor for the purposes, not only of health, but also to meet partially, or fully, the expenses of their confine-ment, etc. This confinement necessarily involved expenses fo feeding, clothing, medical attention, guards, etc., and this had been in its past history a grievous burden upon the tax-payers of the state. Surely it was competent for the *sovereign* to relieve itself of this burden, by making an arrangement with any person to take charge of these con-victs and confine them securely to labor in conformity with the judgments against them for a time not exceed-ing their terms of sentence. It was a transfer by the state.to the lessee of the *control and labor* of these persons *in consideration* that they would feed, clothe, render medi-

cal aid and safely keep them during a limited period. This agreement on the part of the state (*subject to all her rights as a sovereign*) is not a "donation," since it does not transfer "*the title*" of the article (merely the possession), nor is the transfer *without a consideration.*' A consideration is valid in law "if *any* benefit accrues to him who makes the promise or any injury to him who receives the promise." Code, §2740. Bouvier defines it to be "a compensation which is paid or an inconvenience suffered by the party from whom it proceeds." Bouvier's L. D., §278. Blackstone defines it to be "the *reason* which moves the contracting party to enter into the contract." 2 Black. Com., 443.

Taught by the experience of the past, this court holds that the saving to the state of the burden of confining in proper prisons, or by guards, feeding, clothing, furnishing medical treatment to these convicts, was a valid and legal consideration, paid by the Marietta & North Georgia Railroad for these two hundred and fifty convicts, and relieves the transfer made to that company of the *control and labor* of the same by the state from being either a "*donation*" or "*gratuity*" within the meaning of the constitution. A gratuity is defined to be "a present, a recompense, a free gift." Bouv. L. D. A gratuitous contract, such as complainants allege this to be, is defined to be "one, the object of which is for the *benefit* of the person with whom it is made *without any profit received or promised* as a consideration for it, as example, *a gift.*" Bouvier's L. D., 568; 1 Bouv. Inst., 709. Our judgment then is that the act of 1876 was not illegal and void by reason of not having received the concurring votes of two-thirds of each branch of the general assembly.

The question as to whether these convicts are employed by the defendants in conformity with the law of their trans. fer, or what number may have been received by the defendants at the filing of complainants bill, are questions of fact about which there is a conflict of evidence in the re-

cord, and can be best determined by a jury on the trial. For these reasons, we see no abuse of discretion on the part of the judge below in refusing this injunction, and his judgment is therefore affirmed.

Judgment affirmed.