# Richmond

## SHENANDOAH LIME COMPANY AND OTHERS V. GOVERNOR OF VIRGINIA AND OTHERS.

### January 15, 1914.

1. CONSTITUTIONAL LAW—*Validity of Statute—Presumption.*—Every presumption is made in favor of the constitutionality of an act of the legislature. A reasonable doubt as to its constitutionality must be solved in favor of the validity of the law. The courts have nothing to do with the question whether or not it is wise and proper, as the legislature has plenary power except as restrained by the Constitution of the State or the United States, and it is only where a statute is plainly repugnant to a constitutional provision that the courts can declare it null and void.

2. STATUTES—*Construction—Motives of Legislature—When Unimportant.*—The motives, purposes and intentions of the legislature have no existence in law where its enactment is plain and unambiguous on its face, except as those motives may be disclosed on the face of the act itself. It is only where the true meaning of the language used in a statute is doubtful, or so obscure that the meaning of the legislature cannot be determined by giving the words used their ordinary and natural signification that resort can be had to the journals, or other extraneous sources of information, for aid in arriving at the true meaning of the language used in the statute.

3. CONSTITUTIONAL LAW—*Convict Lime Grinding Act—Validity—Dominant Purpose of Act—Incidental Purpose.*—It is apparent from the title, preamble and body of the "convict lime grinding act" that its dominant purpose is to provide suitable employment for certain long term or dangerous convicts confined ·in the penitentiary, and that the other provisions of the act are merely tributary to that end. The provisions of the act are clearly within the police power of the State, and do not conflict with the provisions of section 185 of the Constitution, which forbids the State becoming a party to or interested in "works of internal improvement," nor of section 188, forbidding the

appropriation of public funds for private purposes, nor do such provisions amount to taking property of complainants without due process of law contrary to the fourteenth amendment of the Constitution of the United States.

4. Constitutional Law—*Meaning of "Internal Improvements."*—The term "internal improvements" as used in the Constitution has acquired a definite and well recognized meaning in this State, and the framers of the Constitution must be presumed to have used it only in the definite sense that had attached to it throughout the history of the State. Its meanings as thus defined and understood throughout the legislation of the State, and the decisions of her courts, has included and had reference to the channels of trade and commerce, such as turnpikes, canals, railroads, telegraph lines, and, more recently, telephone lines, and other works of a like *quasi* public character. It was never intended to embrace such things as machinery for grinding lime by convicts and temporary structures to house them while so engaged.

5. Constitutional Law—*Care of Convicts—Police Power.*—It is the duty of the State in its sovereign capacity to provide for the custody, employment and maintenance of its convicts, and to this end it is impelled not only by public expediency, but by motives of humanity. Such employment is necessary, not alone that they may earn their support, but also for their discipline, health and contentment. In discharging these duties the State is exercising its police power.

6. Constitutional Law—*Police Power.*—The police power of the State is not paramount to the Constitution, but its free exercise is never interfered with unless plainly in conflict with the higher law.

7. Constitutional Law—*Convict Lime Grinding Act—Governmental Purpose—Appropriation of Funds—Due Process.*—The "convict lime grinding act," being a valid exercise by the State of its police power, the appropriation which the act carries, in order to put it into effect and carry out its provisions, is clearly for a public purpose and not for a private purpose. The incidental provision for the sale of the product resulting from the employment of the convicts does not affect the governmental purpose of the act. Any injury to private manufacturers of lime that may result from the incidental competition is not the effect of any unlawful discrimination against them within the prohibition of the fourteenth amendment of the Federal Constitution, but is *damnum absque injuria.*

Appeal from a decree of the Circuit Court of the city of Richmond.    Decree for the defendants.    Complainants appeal.

*Affirmed.*

The opinion states the case.

*Braxton & Eggleston* and *R. E. Byrd,* for the appellants.

*A. E. Strode, Coke & Pickrell, C. V. Meredith, Wm. H. Mann, Jr., Samuel W. Williams, Attorney General,* and *Richard B. Davis, Assistant Attorney General,* for the appellees.

Harrison, J., delivered the opinion of the court.

This appeal involves the constitutionality of an act of the General Assembly of Virginia, known as the "Convict Lime Grinding Act," which was approved March 14, 1912, and is found in chapter 295 of the Acts of 1912, page 586.

In approaching this question, it is unnecessary to do more than cite the latest utterance of this court touching the principles by which it is governed in considering the constitutionality of a law, which is found in *Ex Parte Settle,* 114 Va. 715, 77 S. E. 496, where it is said: "The principles by which this court is governed in considering the constitutionality of a law have been too frequently the subject of judicial decision to require the citation of authority.   Every presumption is made in favor of the constitutionality of an act of the legislature.   A reasonable doubt as to its constitutionality must be solved in favor of the validity of the law, and the courts have nothing to do with the question whether or not the legislation is wise and proper, as the legislature has plenary power, except where the Constitution of the State or of the United States forbids, and it is only in cases where the statute in ques-

tion is plainly repugnant to some provision of the Constitution that the courts can declare it to be null and void."

The bill in this case was filed by a number of Virginia corporations and firms engaged in the business of manufacturing agricultural lime, suing on behalf of themselves and all other taxpayers of the Commonwealth to enjoin the Governor of Virginia, the Superintendent of the Penitentiary and the Commissioner of Agriculture, who constitute the board appointed by the act mentioned, and the Auditor of Public Accounts and the State Treasurer, from carrying out the provisions of the act or expending any State funds to that end. From a decree of the circuit court dissolving a preliminary injunction that had been awarded and dismissing the complainants' bill this appeal has been taken.

In their bill of complaint and in their petition for an appeal, appellants assail this "Convict Lime Grinding Act" upon the ground that it violates article 185 of the Virginia Constitution, which forbids the State from becoming a party to or interested in any work of internal improvement, except public roads, or engaged in carrying on such work; it being further insisted that, if this position is not sustained, the act is obnoxious to article 188 of the Constitution because it appropriates public funds for a private purpose or business, and because it amounts to the taking of the property of the appellants without due process of law, contrary to the fourteenth amendment of the Federal Constitution.

The title of the act under consideration is: "An act to provide for the working of certain long term or desperate convicts by the Superintendent of the Penitentiary, the Governor and the Commissioner of Agriculture for the manufacture of ground limestone and oyster shells, and incidentally for the disposition of the same, and the by-

products suitable for road construction, to the citizens of the State."

The preamble of the act is as follows: "Whereas, it is the policy of the State to work as many of the convicts confined in the penitentiary as possible for the building and maintenance of roads, and when on account of character or disposition it shall be expedient so to work them, to provide suitable employment in quarries, where they can be guarded and their product sold."

The body of the act carries out the purpose expressed in its title and preamble. It directs that the convicts be put to work grinding oyster shells and limestone rock, provides the material upon which they are to work and the instrumentalities with which they are to do the work, and further provides for the sale of the product of their labor and for their support and keep from the proceeds. The act appropriates $30,000 for the purpose of carrying its objects into effect, and provides that the ground limestone and oyster shells shall be sold for cash and at a price which shall repay the State for the maintenance, guarding and service of the convicts, for interest on the amount invested in machinery, the upkeep of the machinery, the cost of the rock, shells, etc.; and further provides that the board appointed by the act shall dispose of any by-product of the quarry or oyster shells for road or other purposes to any of the citizens of this State for a fair price, and other details not necessary to be mentioned.

It is apparent from the title, preamble and the body of this act that its dominant purpose is to provide suitable employment for certain long term or dangerous convicts confined in the penitentiary, and that the other provisions of the act are merely tributary to that end. This is practically conceded in clause seven of appellants' original bill of complaint. Appellants, however, do not rest their case alone upon the act as it was actually passed, but insist

that the Governor's message, the entries on the House Journal and the original draft of the act contradict the avowed purpose of the act as passed, and show that the real motive of the legislature was to embark the State in private business in competition with appellants and other private manufacturers, so as to enable it to furnish cheap ground lime to farmers at the expense of the public treasury.

Without expressing any opinion upon the merits of the contention that the matters relied on outside of the act show a different intention from that expressed on the face of the law that was enacted, it is sufficient to say that the motives, purposes or intention of the legislature have no existence in law where its enactment is plain and unambigious on its face, except as those motives may be disclosed on the face of the act itself. It is only where the true meaning of the language used in a statute is doubtful or so obscure that the meaning of the legislature cannot be determined by giving the words used their ordinary and natural signification, that resort can be had to the journals or other extraneous sources of information for aid in arriving at the true meaning of the language used in the statute.

In 36 Cyc. pp. 1137-8, the law is thus stated: "The intention of the legislature, to which effect must be given, is that expressed in the statute, and the courts will not inquire into the motives which influenced the legislature or individual members, in voting for its passage; nor indeed as to the intention of the draftsman, or of the legislature, so far as it has not been expressed in the act."

In *Soon Hing* v. *Crowley*, 113 U. S. 703, 710, 5 Sup. Ct. 730, 734, 28 L. Ed. 1145, Mr. Justice Field, speaking for the Supreme Court says: "And the rule is general with reference to the enactments of all legislative bodies, that the courts cannot inquire into the motives of the legisla-

tors in passing them, except as they may be disclosed on the face of the acts, or inferable from their operation, considered with reference to the condition of the country and existing legislation. The motives of the legislators, considered as the purposes they had in view, will always be presumed to be to accomplish that which follows as the natural and reasonable effect of their enactments."

The effect of the contention under consideration is that the legislature had adroitly conceived and passed the act in question in a valid form, by suppressing or concealing some supposed unconstitutional motive or purpose which it wished to subserve by the legislation. There is nothing in the record to warrant this suggestion, but if there was it would not avail appellants.

In Cooley on Constitutional Limitations (7th ed.), p. 258, it is said: "And although it has sometimes been urged at the bar that the courts ought to inquire into the motives of the legislature where fraud and corruption were alleged, and annul their action if the allegation were established, the argument has in no case been acceded to by the judiciary, and they have never allowed the inquiry to be entered into."

We are of opinion that the machinery for grinding oyster shells and limestone rock, and the temporary structures for housing the convicts pending the work contemplated by the act in question, do not come within the meaning of the term "internal improvements," as that term is used in article 185 of the Constitution. Whatever interpretation that term may have elsewhere, it has no such meaning in Virginia, where for nearly if not quite one hundred years it has acquired a definite and well recognized meaning. Each of our Codes, beginning with that of 1819, to and including the Code of 1887, have had chapters entitled "Works of Internal Improvement." In using this term in article 185, the late Constitutional Convention must be

presumed, according to established rules of construction, to have used the term only in the definite sense and meaning that had attached to it throughout the history of the State. Its meaning as thus defined and understood throughout the legislation of the State, and the decisions of her courts, has included and had reference to the channels of trade and commerce, such as turnpikes, canals, railroads, telegraph lines, including in more recent years telephone lines, and other works of a like *quasi* public character. In the past these works, designated as "works of internal improvement," were sometimes constructed and operated by the State, but generally by corporations composed of private individuals, which, because of the public character of their works, always enjoyed the power of eminent domain, owed duties to the public and were subject to State regulation. These corporations, because of the great need of such improvements at the time, and the difficulty attending the construction of such works, were generally encouraged by State aid, and it was not until the Constitution of 1869 that the State was inhibited from becoming a party to or interested in such works of internal improvement.

The cheap structures used for grinding limestone rock and oyster shells have no element of permanency about them and may be moved from place to place as the necessity arises. The terms "internal improvements," as used in the Constitution, was never intended to include such work. To thus broaden the long accepted meaning of that term in Virginia would deprive the State of its police power, as well as the exercise of its necessary governmental functions. The manifestly dominant purpose of the act being, as already seen, to provide employment for convicts who could not be used in the usual employments under existing statutes, there can be no question that the State is acting within its police power in providing the present means for

employing such convicts. It is the duty of the State in its sovereign capacity to provide for the custody, employment and maintenance of its convicts, and to this end it is impelled not only by public expediency but by motives of humanity. Such employment is necessary, not alone that they may earn their support, but also for their discipline, health and contentment.

An examination of the authorities shows that the courts, generally, are indisposed to suffer the police power to be impaired or defeated by constitutional limitations.

In *Barbier* v. *Connolly*, 113 U. S. 27, 31, 5 Sup. Ct. 357, 359 (28 L. Ed. 923), Mr. Justice Field, in speaking of the effect of the Fourteenth Amendment of the Federal Constitution upon exercises by a State of its police power, says: "But neither the amendment, broad and comprehensive as it is, nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education and good order of the people, and to legislate so as to increase the industries of the State, develop its resources, and add to its wealth and prosperity."

The dispensary laws which have been enacted in a number of States and upheld by the courts are instructive illustrations of the extent to which the sovereign may go in the exercise of its police powers. *State* v. *Aiken*, 62 S. C. 222, 20 S. E. 221, 26 L. R. A. 345; *Farmville* v. *Walker*, 101 Va. 323, 43 S. E. 558, 61 L. R. A. 125, 99 Am. St. Rep. 870; *Mugler* v. *Kansas*, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205.

In commenting upon the laws prohibiting the sale and manufacture of liquors, Judge Cooley says: "Perhaps there is no instance in which the power of the legislature to make such regulations as may destroy the value of property, without compensation to the owner, appears in a more

striking light than in the case of these statutes. The trade in alcoholic drinks being lawful, and the capital employed in it being fully protected by law, the legislature then steps in, and by an enactment based on general reasons of public utility, annihilates the traffic, destroys altogether the employment, and reduces to a nominal value the property on hand. Even the keeping of that for the purposes of sale becomes a criminal offence; and, without any change whatever in his own conduct or employment, the merchant of yesterday becomes the criminal of to-day, and the very building in which he lives and conducts the business which to that moment was lawful becomes the subject of legal proceedings, if the statute shall so declare, and liable to be proceeded against for a forfeiture. A statute which can do this must be justified upon the highest reasons of public benefit; but, whether satisfactory or not, the reasons address themselves exclusively to the legislative wisdom." Cooley's Constitutional Limitations, p. 850.

The police power of the State is not paramount to the Constitution, but its free exercise is never interfered with unless plainly in conflict with the higher law.. *Noble* v. *State Bank,* 219 U. S. 104, 31 Sup. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062; *N. & W. R. Co.* v. *Com'th,* 93 Va. 749, 24 S. E. 837, 34 L. R. A. 105, 57 Am. St. Rep. 827.

In the case at bar we are warranted, upon abundant authority, in holding that the exercise by the State of its police power, in enacting the "Convict Lime Grinding Act" under consideration, cannot be defeated because of any conflict with article 185 of the Constitution.

We are further of opinion that the act does not violate article 188 of the Virginia Constitution. It does not, as contended, appropriate public funds for a private purpose; nor does it amount to the taking of the property of complainants without due process of law, contrary to the Fourteenth Amendment of the Federal Constitution. It

being the purpose of the act to furnish employment to con-
victs, as appears from the act itself, and that purpose
being, as already seen, a valid exercise by the State of its
police power, the appropriation which the act carries is
clearly for a public purpose and not for a private purpose.
The manner in which the State shall discharge the duty of
providing for its convicts must be vested in the discretion
of the legislature. In the exercise of this discretion, the
legislature can provide employment, and there is no con-
stitutional inhibition upon its convicts being put to grind-
ing oyster shells and limestone rock, as provided in the
present act, if such a course is deemed expedient. An act
having this object has a public or governmental purpose,
and the incidental provision for the sale of the product re-
sulting from such employment of its convicts does not af-
fect such governmental purpose. The necessary conse-
quence of the public or governmental purpose of such an
act is the appropriation of public funds to carry the act
into effect, and such an appropriation is not unconstitu-
tional. Any injury to the private manufacturers of lime
that may result from the incidental competition is not the
effect of any unlawful discrimination against them within
the prohibition of the Fourteenth Amendment to the Fed-
eral Constitution, but is *damnum absque injuria.*

It would prolong this opinion to a wholly useless extent
to attempt to comment in detail upon all the authorities
cited by learned counsel. Those relied on by the appel-
lants have been given due consideration and they have been
found not to impair the conclusion reached, that the act
here assailed is not repugnant to either the State or the
Federal Constitution. The decree of the circuit court so
holding is plainly right and must be affirmed.

*Affirmed.*