**ALLGOOD, Auditor, v. STATE ex rel. WILSON.** (3 Div. 494.)

(Court of Appeals of Alabama. Jan. 20, 1925. Rehearing Denied Feb. 17, 1925. Reversed on Mandate June 30, 1925.)

**I. Statutes** ⚖=181(1) **— Fundamental rule of construction stated.**

Fundamental rule in construction of statute is to ascertain and give effect to Legislature's intention, expressed in statute, without assuming legislative authority, but where language is of doubtful meaning or adherence to strict letter would lead to injustice, absurdity or contradictory provisions, courts must ascertain true meaning, or, if impossible, give reasonable construction consistent with legal principles.

⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**2. Statutes ⊚⟳184—Public policy and legislative policy disclosed by general course of legislation considered in construing statute.**

To determine meaning of statute, recourse may be had to considerations of public policy and Legislature's established policy, as disclosed by general course of legislation.

**3. Convicts ⊚⟳7—State entitled to convict's labor, though compulsory and unpaid.**

By legislative policy, embodied in Code 1923, § 3582 et seq., state has assumed burden of administering punishments imposed by courts, maintaining convict and looking after his welfare, but it is entitled to his labor, though service is compulsory and unpaid.

**4. Convicts ⊚⟳2—Management and control of state prisoners is for Legislature within constitutional limitation.**

Management and control of state prisoners convicted of crime is for Legislature within constitutional limitation against cruel and unusual punishment.

**5. Evidence ⊚⟳65—One electing to serve sentence pending appeal conclusively presumed to know statutes and rules of administrative board concerning maintenance, management, and control of convicts.**

One convicted of felony, and all others, at time election is made, under Code 1923, § 3672, to serve part of sentence pending appeal from conviction, are conclusively presumed to know of section 3582 et seq., and section 3611, and rules and regulations of state board of administration with respect to maintenance, management, and control of convicts by state.

**6. Convicts ⊚⟳2—Defendant, electing to serve sentence pending appeal, becomes prisoner subject to control of board of administration.**

Under Code 1923, § 3241, judgment of conviction is suspended pending appeal, unless defendant elects to serve sentence during such time under section 3672, in which case he becomes prisoner, subject to system and policy of state for control and management of convict system, including maintenance, classification, and subjection to such involuntary servitude and confinement in such place as board of administration, with Governor's approval, may determine.

**7. Statutes ⊚⟳205—Statute construed as whole in light of conditions existing at time of original enactment down to adoption of Code in which embodied.**

Code 1923, §§ 3672, 3673, requiring state, on reversal of judgment of conviction, to pay one electing to serve sentence pending appeal, amount it would otherwise have received from proceeds of his labor, must be interpreted by consideration of its provisions as whole, in light of conditions existing at time of original enactment (Acts 1907, p. 718, § 1) until adoption of Code.

**8. Evidence ⊚⟳23(1)—Common knowledge that many convicts would remain in jail at state's expense pending appeal, except for statute authorizing election to serve part of sentence.**

It is matter of common knowledge that many convicts, sentenced to term not exceeding 10 years in penitentiary, are unable to give bond pending appeal to Supreme Court, and would remain in jail at state's expense pending such appeal, but for Code 1923, § 3672, authorizing election to serve part of sentence pending appeal.

Samford, J., dissenting in part.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Petition of the State of Alabama, on the relation of Newt Wilson, for mandamus to W. B. Allgood, State Auditor, to require the issuance of a warrant for amount claimed by petitioner, as a prisoner electing to serve pending appeal. From a judgment awarding the writ, respondent appeals. Affirmed

Certiorari granted by Supreme Court in Ex parte Allgood, Auditor, 104 So. 851.

Harwell G. Davis, Atty. Gen., for appellant.

In construing statutes, the courts must look to the legislative intent. Davis & Co. v. Thomas, 154 Ala. 279, 45 So. 897; City of Birmingham v. Sou. Exp. Co., 164 Ala. 529, 51 So. 159. Each clause should be given some meaning. Ex parte Dunlap, 71 Ala. 73; Wimberly v. Mayberry, 94 Ala. 258, 10 So. 157, 14 L. R. A. 305. This statute must be strictly construed. State ex rel. Lott v. Brewer, 64 Ala. 287. "Earnings" means net profit or proceeds. Baldwin v. Miller & Lux, 152 Cal. 454, 92 P. 1030; Livingston Co. Bank v. First St. Bank, 136 Ky. 546, 121 S. W. 451, 124 S. W. 829; Ledwith v. Brian, 84 Neb. 30, 120 N. W. 916; Kidwell v. Ketler, 146 Cal. 12, 79 P. 514.

Thos. B. Hill, Jr., of Montgomery, and H. T. Burns, of Wedowee, for appellee.

It is the purpose of the statute that there be paid to the convict the gross, not net, amount earned by him. Code 1907, § 6578; Code 1923, § 3673; 19 C. J. 835; First Nat. Bank v. Barnum (D. C.) 160 F. 245; West. St. Ins. Co. v. Lockwood, 166 Cal. 185, 135 P. 496; Goodhart v. P. R. R., 177 Pa. 1, 35 A. 191, 55 Am. St. Rep. 705; 32 Cyc. 439; Words and Phrases, First and Second Series, "Earnings."

SAMFORD, J. A correct statement of the issues involved in this appeal is to be found in the brief of the Attorney General on behalf of appellant, which we here adopt:

"Newt Wilson, the petitioner, was convicted of a felony and sentenced to a term of service in the penitentiary. He appealed and elected not to have his sentence suspended during the pending of his appeal. His case was reversed and remanded, whereupon he demanded that the state pay him the gross amount paid by the contractor to the state for his labor without any deduction therefrom by the state for the expense to which the state was put for maintaining and boarding him. He also demanded the

---

⊚⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

gross amount of the value of his labor for the state, for which the state received no pay, without any deduction being made for the expense of his maintenance. The contention of the state is that the petitioner is entitled to receive the net returns to the state of his labor, and that there must be deducted from the proceeds of his hire the expense of his maintenance, etc. That part of section 3672 of the Criminal Code 1923, necessary to the determination of the question under consideration, is as follows, to wit:

" 'When any person is convicted of a felony, and takes an appeal from said judgment of conviction to the Supreme Court of Alabama, and pending said appeal he elects to not have said judgment and sentence suspended, pending said appeal, and goes to the penitentiary and performs labor as directed under said sentence of judgment, if the case be reversed and remanded or rendered, the state of Alabama must at once pay him, or his attorney of record, the amount earned while performing said labor under said sentence. * * * The amount to be paid him is the amount which the state would have received from the proceeds of his labor, if said judgment of conviction had not been reversed and remanded or rendered.'

"This section was section 6577 of Criminal Code of 1907, and was first passed by the Legislature of 1907. General Acts 1907, p. 718. So far as the decision in this case is concerned, the wording of the original act and the Code sections are the same. What is the proper amount to be paid Newt Wilson? Said section 3672 answers the question in the following language, to wit:

" 'The amount to be paid him is the amount which the state would have received from the proceeds of his labor, if said judgment of conviction had not been reversed and remanded or rendered.' "

It may further be stated, as appears from the record, that upon coming into the prison the petitioner was first brought to Kilby prison where he remained for three days. From March 10, 1923, to October 6, 1923, the petitioner was put to work as a miner for the Sloss-S & I Company for which it received as gross proceeds $349.50. On October 6th, petitioner, for some reason, was returned to Kilby prison, where he remained doing work on the state's farm until July 31, 1924, when his case was reversed by this court.

The difficulty arising in this case is by reason of the failure of the Legislature to designate in the statute whether the amount to be paid is to be "gross" or "net," and whatever the proper construction of the statute is, that qualifying word must be supplied by the courts, under such rules of judicial construction as govern in such cases. As to these, we enter into a realm, for the most part uncharted, and where the trails are dim and uncertain.

[1] There is however, one great fundamental rule to be observed in the construction of all statutes, and that is to ascertain and give effect to the intention of the Legislature, expressed in the statute without assuming legislative authority. 36 Cyc. 1106 (2). But,

even this rule has its limitations. Where the language of the statute is of doubtful meaning, or where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, the duty devolves on the courts of ascertaining the true meaning, and if the intention of the Legislature is impossible of ascertainment, it is the duty of the courts to give a reasonable construction, consistent with legal principles. Manuel v. Manuel, 13 Ohio St. 458; Big Black Imp. Co. v. Commonwealth, 94 Pa. 450; Old Do. Bldg. & L. Ass'n v. Sohn, 54 W. Va. 101, 46 S. E. 222.

[2] It is also announced by text-writers and sustained by ample authority that:

"For the purpose of determining the meaning of a statute, recourse may be had to considerations of public policy, and to the established policy of the Legislature as disclosed by a general course of legislation." 36 Cyc. 1111; Davis & Co. v. Thomas, 154 Ala. 279, 45 So. 897; City of Birmingham v. So. Ex. Co., 164 Ala. 529, 51 So. 159.

[3, 4] What was meant by the Legislature when it wrote into the statute: "Amount which the state would have received from the proceeds of his labor?" The state, by a system of laws, now embodied in chapter 106, § 3582 et seq. of the Code of 1923, has adopted, and for many years has maintained, a policy with reference to all persons sentenced to the penitentiary upon conviction of felony, and as to these unfortunate persons has assumed the burden of administering the punishments imposed by the courts and the incident burden of maintaining the convict and looking after his welfare. But, it is universally held that the state, in such cases, is entitled to the labor of the convict, although the service is compulsory and unpaid. The whole subject of the management and control of state prisoners convicted of crime is one for the Legislature within the constitutional limitation against cruel and unusual punishment. 27 L. R. A. 593; L. R. A. 1916D, 661.

[5] The policy of this state, with reference to the management and control of convicts, may be said to be embraced in section 3611 of the Code of 1923, as follows:

"*How State Convicts Must be Hired and Employed.*—The state convicts shall be' hired or employed at such labor and in such places and under such regulations within the state as may be determined by the board, with the approval of the Governor, having in view the end of making the system self-sustaining as far as consistent with the humane treatment of the convicts."

In the carrying out of this policy, the state maintains and controls several separate prisons, and in some cases engages the convicts in work for private enterprises, but always retaining through its officers the maintenance as well as the control of the prisoners. The prisoners are examined and classed according to physical and mental condition, and

assigned to such labor as is most suitable to the particular individual, sometimes to the walls, or to the hospital, and sometimes to contract labor, i. e., to labor for private enterprises for which the state receives a stipulated amount for the labor of the individual convict. In the first two instances, the state receives no definite ascertainable amount from the proceeds of his labor. In the third instance the state does receive such an amount. These statutes above referred to, as well as the rules and regulations of the state board of administration, are conclusively presumed to be known to each person convicted of a felony, as well as all others at the time election is made under the provisions of section 3672 of the Code of 1923.

[6] Upon conviction, the defendant has the right of appeal as fixed by the statutes. In event appeal is taken, the judgment is suspended pending such appeal under Code 1923, § 3241, unless the defendant, by his own election, chooses the privilege given under section 3672, supra.

There is no compulsion as to this election. The defendant is perfectly free to have the judgment suspended. In which event, if the sentence is for 10 years or less he can make bond for his appearance or remain in jail. If he adopts this course he assumes his own maintenance pending the appeal. If, however, he elects not to have the sentence suspended, he becomes in every sense of the word a prisoner subject to the system and policy adopted by the state for the control and management of the convict system which is, that in any event he will be humanely treated, and maintained and classed and put to such involuntary servitude as those in control may determine. With this he has no say so. The board of administration, with the approval of the Governor, determines his status and the place of his confinement. In any event his labor for the state is without remuneration for expenses incurred by the state. There is no element of mutuality in the relation. The state must maintain the convict humanely, whether he labor or not, and on its part, enforces the labor from those able to do so as a means of enforcing prison discipline. Topeka v. Boutwell, 53 Kan. 20, 35 P. 819, 27 L. R. A. 593; Shenandoah L. Co. v. Governor, 115 Va. 865, 80 S. E. 753, Ann. Cas. 1915C, 973, or of preserving the health of the convict as also to enable the state, in part at least to defray the expenses of conviction, support, and custody of the prisoner. Ga. Pen. Co. v. Nelms, 65 Ga. 499, 38 Am. Rep. 793; People v. Hawkins, 157 N. Y. 1, 51 N. E. 257, 42 L. R. A. 490, 68 Am. St. Rep. 736.

If, under the classification and assignment, the prisoner is put to work in Kilby prison as a farm laborer, the state receives no "amount from the proceeds of his labor," within the meaning of section 3672 of the Code supra. It is inconceivable that the Legislature contemplated a condition requiring the state authorities to enter into the maze of estimates, calculation, and bookkeeping necessary to an ascertainment of the amount the state received from the proceeds of the labor of each individual prisoner engaged in general farmwork, or any other work performed generally, by prisoners confined and worked in the penitentiary. On the other hand, it is equally apparent that when the Legislature said "the amount to be paid him is the amount which the state would have received from the proceeds of his labor" it did not mean to relieve the state of its burden to maintain and support the prisoner, by permitting the prison authorities to figure the expense of maintaining the convict system and compelling a contribution from the prisoner of his pro rata share. So that, when a defendant, after conviction, takes an appeal and elects not to have the judgment suspended, he goes to the penitentiary as a prisoner, subject to all the laws and rules and regulations of the board. If, upon being classified, he falls among those from whom the state, by its contracts with private persons, firms, or corporations, receives for the hire of the labor of convicts, as under section 3648 of the Code of 1923, a definite amount, as the proceeds of his labor, and his case is reversed, the state must pay the amount to him or his attorney of record as provided by Statute Code, § 3673.

It being admitted that the state received, as proceeds of petitioner's labor, $349.58, and it further appearing without conflict that the state received no other amount from the proceeds of petitioner's labor within the meaning of the statute under consideration, it follows that the amount petitioner is entitled to receive is $349.58, and as the facts could not be different this court will proceed to render the judgment, which should have been rendered in the court below. I think the judgment of the circuit court should be affirmed in part, and reversed in part, and a judgment here be rendered commanding W. B. Allgood, as auditor of the state of Alabama, to draw his warrant on the state treasurer in favor of petitioner or his attorney of record for the amount of $349.58, but the majority are of the opinion that the judgment should be affirmed.

Judgment affirmed.

SAMFORD, J., dissents.

BRICKEN, P. J., and RICE, J., concurring in the foregoing, except as to the following: The amount earned by the petitioner, as a farm laborer on the state farm at Kilby prison, should be paid to him. The following appears in the answer of respondent, and was the agreed statement of facts, upon which the case was tried in the lower court.

".From March 10, 1923, to and including October 5, 1923, petitioner was employed at Flat Top mine in mining coal under a contract which the state had with Sloss-Sheffield Steel & Iron Company; that, under this contract the state undertook the expense of keeping, maintaining, and caring for the convicts; that for petitioner's service at Flat Top mine the state received the sum of $349.58, and expended in keeping, maintaining, and caring for petitioner, the sum of $130.20. The expense of transferring petitioner to and from Flat Top mine was $17.36. From October 1, 1923, to and including July 31, 1924, petitioner did general farmwork at Kilby prison, for which the state received no payment. It is estimated that his labor was worth, during said last-mentioned period, the sum of $126, and the state during said period incurred an expense in the sum of $239.20 in keeping, maintaining, and caring for petitioner." .

[7] Section 1 of an act approved August 13, 1907 (Acts 1907, p. 718) incorporated in the Code of 1907 as section 6577 and brought forward in the Code of 1923 as section 3672, provides:

"When any person is convicted of a felony and takes an appeal from said judgment of conviction to the Supreme Court of Alabama, and pending said appeal he elects to not have said judgment and sentence suspended, pending said appeal, and goes to the penitentiary and performs labor as directed under said sentence of judgment, if the case be reversed and remanded or rendered, the state of Alabama must at once pay him or his attorney of record the amount earned while performing said labor under said sentence. * * * The amount to be paid him is the amount which the state would have received from the proceeds of his labor, if said judgment of conviction had not been reversed and remanded or rendered."

Section 3673, Code 1923, provides that the earnings of the convict mentioned in section 3672, Code 1923, shall be paid by the state treasurer upon warrant issued by the state auditor "for the amount earned by said person for said services." A correct interpretation of the statute must be gathered from a consideration of its provisions, as a whole, in the light of the conditions existing at the time of the original enactment and down to the adoption of the Code of 1923.

At the time of the passage of the act of 1907, supra, when a person was convicted of a felony, and was sentenced to a term in the penitentiary, if he appealed to the Supreme Court from the judgment of conviction and sentence, he was not allowed to give bail pending his appeal, but had to remain in jail until the determination of his appeal by the Supreme Court. After conviction and sentence, the state furnished the convict a place of lodging (the county jail) and paid his feed bill. In order to relieve the state of the heavy financial burden, imposed upon it for feeding convicts confined in jail pending appeal to the Supreme Court, this statute was passed to encourage the convict to elect to perform the hard labor imposed, by paying to him the amount of his earnings while in the penitentiary, in case of the reversal or rendering of his case on appeal. Had the convict remained in jail, it was at the expense of the state, if he elected to perform the hard labor imposed it was still at the expense of the state, but the convict was rewarded by paying to him the amount of his earnings while serving the state. In those cases, which were affirmed on appeal, the state was saved the expense of feeding the convicts in the jails. It was also advantageous to the convict who elected to perform hard labor instead of remaining in jail, as in case of affirmance he was given credit on his sentence for the time served pending the appeal.

[8] Later a statute was enacted allowing bail in felony convictions where the sentence imposed did not exceed 5 years, and in 1923 this was extended to sentences not exceeding 10 years. Notwithstanding that all convicts sentenced to a term not exceeding 10 years in the penitentiary now have the right to give bail pending appeal to the Supreme Court, it is a matter of common knowledge that many are not able to give the required bond, and but for section 3672, Code 1923, would remain in jail at the expense of the state pending such appeal.

It is clear that the Legislature intended that the earnings of the convict should be paid to him in case of a reversal or rendering of his case on appeal. By earnings is meant *all* of his earnings, and not his net earnings after deducting from the gross earnings the cost of his board, lodging, clothing, and removal fees, and his proportionate cost of administration. It was never contemplated that the convict department or the state board of administration should be required to calculate to a mathematical certainty the cost of maintaining the convict, and deduct such cost from his earnings. No better illustration than the instant case is required to show the complete emasculation of the statute by such a proceeding. The convict in this case worked for the state 480 days without receiving one cent. and earned in the mines $349.58, which was paid to the state, and at farmwork $127.50, still the state figures that the convict owes it $40.03.

Of course, if the convict was sick and unable to work and earned nothing, the state should pay nothing. But, where, as in the instant case, the convict performed labor for the state, the statute requires the state to pay him the amount he earned. The amount earned by the petitioner was $477.08, as we find is shown by the agreed statement of facts.

It follows that the judgment of the circuit court must be affirmed.

Affirmed.

PER CURIAM. Reversed and remanded on authority of Ex parte Allgood, Auditor (In re Allgood, Auditor, v. State ex rel. Wilson) 104 So. 851.