# Richmond.

## STRAWBERRY HILL LAND CORPORATION V. STARBUCK AND OTHERS.

### November 14, 1918.

#### Absent, Sims, J.

1. DRAINS AND SEWERS—*Power of Legislature—Special Assessments.*
   —There is no doubt whatever, in the absence of some constitutional inhibition, of the power of the. General Assembly to provide for the drainage and reclamation of swamp lands by the creation of local drainage districts, to delegate their power to local agencies to organize and control systems of drainage within their boundaries, and to assess the cost thereof against the property thereby benefited. Such statutes are sustained as enacted in the interest of public health, convenience or welfare; and it seems to be universal that where such laws are authorized, the power to provide for assessing the cost and expenses of the improvement against the lands benefited follows as a. natural result, and as necessary and incidental to the exercise of the power to make the improvement.

2. DRAINS AND SEWERS—*Nature of Drainage District.*—Drainage districts have been denominated public, or quasi-public corporations, quasi-municipal corporations; and it is also said they are not corporations at all, but merely governmental agencies for the administration of a legislative power. It has been held that a constitutional power expressly granted to the legislature to organize various specified municipal and quasi-municipal corporations, not including drainage districts, does not preclude the organization of such districts; and that town officers performing duties imposed upon them in connection with the administration of a drainage district, act as representatives of the State and not of the town.

3. CONSTITUTIONAL LAW—*Constitution Not a Grant of Power—Construction in Favor of Act.*—The State Constitution is not a grant of power, but only the restriction of powers otherwise

practically unlimited, except so far as restrained by the Constitution, the legislature has plenary power, and every fair doubt must be resolved in favor of the constitutionality of an act of the General Assembly.

4.  STATUTES—*Constitutionality—Act Valid in Part, Invalid in Part.* —The rule is that an act may be valid in one part and invalid in another, and if the invalid is severable from the remainder, that invalid part may be ignored, if after such elimination the remaining portions are sufficient to accomplish their purpose in accordance with the legislative intent. It is only when the void portion is the inducement to the passage of the act, or is so interwoven in its texture as to prevent the statute from becoming operative in accordance with the will of the legislature, that the whole statute is invalid.

5.  STATUTES—*Constitutionality—Act Valid in Part, Invalid in Part —Drainage Act.*—Even if section 2 of the drainage act (Acts 1914, p. 642), providing for the payment of preliminary costs by the board of supervisors is invalid, this does not invalidate the whole act.

6.  CORPORATIONS—*Creation by Special Act—Drainage District.*— Section 17 of the drainage act (Acts 1914, p. 642) is not unconstitutional as creating a private corporation by special law.

7.  CORPORATIONS—*Creation by Special Act—Drainage District.*— A drainage district is not a private corporation, and section 153, article 12 of the Constitution of 1902, defining the term "corporation," has no application to such districts. A drainage district is neither a private corporation or association, nor is it either a municipal corporation or a public institution owned or controlled by the State. It is an organization not within the contemplation of the convention when the article was framed, an organization for which the Constitution has made no express provision, and against the creation of which there is no inhibition. It is a governmental agency, an unincorporated community, organized for a specified and limited public purpose under the police power of the State.

8.  STATUTES—*Constitutionality—Special Statutes.*—If a statute applies throughout the State and to all persons and property within the class specified and the classification is reasonable and not arbitrary, such a statute is not special, but general.

9.  STATUTES—*Constitutionality—Special Statutes—Drainage Act.*— The drainage act (Acts 1914, c. 332) applies to the entire State, without any qualification whatever, its purpose being (to quote

from the title and the first section) "to promote the public health, convenience and welfare by leveeing, ditching and draining the wet, swamp and overflowed lands of the State, and providing for the establishment of levee or drainage districts," etc. Such a law is general because it clearly applies to all persons and to all lands in all parts of the State which can be improved by drainage, and therefore · is not violative of section 63, article 4 of the Constitution of 1902, which prohibits the General Assembly from enacting any special or private law for creating private corporations.

10. DRAINAGE ACT—*Construction of Act—Provision that Drainage Commissioners Shall be a Body Corporate.*—So much of the drainage act (Acts 1914, c. 332) as provides that the board of drainage commissioners shall be a body corporate and possess such powers as usually pertain to corporations, might be rejected as surplusage, for it is perfectly clear, under the general rules for the construction of such statutes as well as from the very next paragraph in the section, that this provision adds nothing whatever to the powers conferred upon such boards, and that no power whatever is conferred except the specific powers granted by the various sections of the act. The act itself in detail prescribes the entire authority and jurisdiction of the board of drainage commissioners.

11. STATE CORPORATION COMMISSION—*Drainage Districts—Section 156-a, article 72 of the Constitution of 1902.*—The drainage act (Acts 1914, c. 332) is not unconstitutional as violative of section 156-a of article 12 of the Constitution of 1902, providing that the State Corporation Commission shall be the department of government through which shall be issued all charters or amendments or extensions thereof, for domestic corporations. Section 156-a has no relation whatever to public corporations, or to the governmental agencies created by the State. It refers to private corporations which individuals have the right to organize upon complying with the statutes conferring such right.

12. DRAINAGE ACT—*Constitutionality—Special Assessments—Section 170, Article 12, Constitution of 1902.*—Sections 29 and 32 of the drainage act (Acts 1914, c. 332), which provide for assessments against lands in the district and the issuance of bonds of the district, and for levying assessments for the payment of the bonds, are not violative of article 12, section 170, of the Constitution of 1902, which provides that: "Except in cities and towns no such taxes or assessments for local public improvements shall be imposed upon abutting landowners."

10

13. DRAINAGE ACT—*Constitutionality—Special Assessments—Section 170, Article 12, Constitution of 1902—"Such."*—The synonyms of "such" are "like," "similar," "of that kind," "of the like kind." "Such" is a descriptive and relative word, and refers to the last antecedent, unless the meaning of the sentence would thereby be impaired. It means identical with or similar to something which has been already specified or implied. As used in section 170, article 12 of the Constitution of 1902, it refers to the assessments which had been immediately theretofore mentioned in the section which were assessments for the usual and customary municipal improvements, clearly specified or indicated in the preceding paragraph, and it is assessments like these which the clause prohibits the counties from levying against abutting landowners.

14. DRAINAGE ACT—*Constitutionality—Special Assessments—Section 170, article 12, Constitution of 1902—"Abutting Owners."*—The assessments under the drainage act are not assessed against "abutting" owners as a class, but assessed against all landowners whose lands within the drainage district are benefited, and no assessments can be made upon landowners simply because their lands abut or are merely adjacent to the district, however great the benefit to them may be. The prohibition, in section 170, article 12, Constitution of 1902, is against assessments against "abutting" landowners, and in such discussions it must be always remembered that it is not enough to suggest a constitutional restraint. If there be doubt, that doubt must be resolved in favor of the constitutionality of the act under consideration.

15. DRAINAGE ACT—*Constitutionality—Article 1, Sections 6 and 11, and Article 4, Section 58, Constitution of 1902—Fourteenth Amendment.*—The drainage act (Acts 1914, c. 332) is not violative of article 1, sections 6 and 11, and article 4, section 58, of the Constitution of 1902, nor of the fourteenth amendment of the Federal Constitution.

16. DRAINAGE ACT—*Police Power.*—The drainage act is sustained under the police power which is expressly reserved in the Constitution of 1902, in section 159, which provides that "the exercise of the police power of the State shall never be abridged."

17. POLICE POWER—*Constitutional Limitations.*—The authorities show that the courts generally are indisposed to suffer the police power to be abridged or defeated by constitutional limitations. It is possible, of course, for the Constitution to impose such limitations, but they must be clearly imposed or there are no

such limitations. The police power is not paramount to the Constitution, but its free exercise is never interfered with unless plainly in conflict therewith.

18. POLICE POWER—*Extent.*—The power of the State not only embraces regulations designed to promote public convenience and general prosperity, but also such regulations as are designed to promote the public health, public morals, or the public safety.

Appeal from a decree of the Circuit Court of Henrico county. Decree for defendants. Plaintiffs appeal.

*Affirmed.*

The opinion states the case.

*R. W. Carrington* and *McNeill & Bremner,* for the appellant.

*R. Grayson Dashiell* and *Wolcott, Wolcott, Lankford & Kear,* for the appellees.

PRENTIS, J., delivered the opinion of the court.

In this proceeding the constitutionality of the act, entitled, "An act to amend and re-enact an act entitled an act to amend and re-enact an act entitled an act to promote the public health, convenience, and welfare by leveeing, ditching, and draining the wet, swamp and overflowed lands of the State, and providing for the establishment of levee or drainage districts for the purpose of enlarging or changing any natural water courses, and for digging ditches, or canals, for securing better drainage, or providing better outlets for drainage, for building levees or embankments, and installing tide gates or pumping plants for the reclamation of overflowed lands, and prescribing a method for so doing, and providing for the assessment and collection of the cost and expenses of the same, and issuing and selling bonds therefor, and for the care and maintenance of such improvements when constructed, approved March 17, 1910, and as amended and re-enacted and approved March 12,

1912" (Acts 1914, page 642), is attacked in several particulars.

[1] There seems to be no doubt whatever, in the absence of some constitutional inhibition, of the power of the General Assembly to provide for the drainage and reclamation of swamp lands by the creation of local drainage districts, to delegate their power to local agencies to organize and control systems of drainage within their boundaries, and to assess the cost thereof against the property thereby benefited; indeed, these general propositions are not denied by the petitioner. The legislative authority is said to rest on the police power, the power of eminent domain and the taxing power. Some of the courts adjudge such legislation valid upon one of these grounds and some upon another, but they are consistent in sustaining such statutes as enacted in the interest of public health, convenience or welfare; and it seems to be universal that where such laws are authorized, the power to provide for assessing the cost and expenses of the improvement against the lands benefited follows as a natural result, and as necessary and incidental to the exercise of the power to make the improvement.

[2] It has been said that the exact status of such districts is an academic question. Certainly it is not necessary to define it with precision. Such districts have been denominated public, or quasi public corporations, quasi municipal corporations; and it is also said they are not corporations at all, but merely governmental agencies for the administration of a legislative power. It has been held that a constitutional power expressly granted to the legislature to organize various specified municipal and quasi municipal corporations, not including drainage districts, does not preclude the organization of such districts; and that town officers performing duties imposed upon them in connection with the administration of a drainage district, act as representatives of the State and not of the town. The general

subject is exhaustively discussed in the notes to Ann. Cas. 1915C, page 9 ; 9 R. C. L., pages 642, 644; 60 L. R. A. 161; 14 Cyc., 1018.

[3] In determining the constitutionality of a statute, we must of course always bear in mind that the State Constitution is not a grant of power, but only the restriction of powers otherwise practically unlimited, that, except so far as restrained by the Constitution, the legislature has plenary power, and that every fair doubt must be resolved in favor of the constitutionality of an act of the General Assembly *Ex Parte Settle,* 114 Va. 715, 77 S. E. 496; *Pine and Scott* v. *Commonwealth,* 121 Va. 822, 93 S. E. 652.

[4, 5] 1. In this case the trial court held unconstitutional so much of section 2 of the act as provided for the payment of the preliminary costs by the board of supervisors of the county, in the circuit court of which the petition had been filed; and it is claimed that because of this the whole act is invalid. We cannot agree with this view. The rule is that an act may be valid in one part and invalid in another, and if the invalid is severable from the remainder, that invalid part may be ignored, if after such elimination the remaining portions are sufficient to accomplish their purpose in accordance with the legislative intent; and that only if the void portion is the inducement to the passage of the act. or is so interwoven in its texture as to prevent the statute from becoming operative in accordance with the will of the legislature, is the whole statute invalid. *Trimble's Case,* 96 Va. 818, 32 S. E. 786; *Robertson* v. *Preston,* 97 Va. 300, 33 S. E. 618; *Lambert* v. *Smith,* 98 Va. 268, 38 S. E. 933; *Danville* v. *Hatcher,* 101 Va. 523, 44 S. E. 723; *Campbell* v. *Bryant,* 104 Va. 509, 52 S. E. 638. This precise point was raised in *State* v. *Taylor,* 224 Mo. 472, 123 S. W. 892, in which it was held that even if the section providing for the payment by the county of damages and initial ex-

penses of a drainage district is unconstitutional, this does not render the remainder of the act inoperative.

[6, 7] 2. It is claimed that section 17 of the drainage act is void, because it creates a private corporation by special law.

(a) It is so perfectly clear, under the authorities heretofore referred to, which could be greatly multiplied, that such a corporation is not a private corporation, that we deem it unnecessary to pursue the subject at length. Section 153 of article 12 of the Constitution is cited, and the clauses relied upon are those which define the term "corporation" as used in that article as including "all trusts, associations and joint stock companies having any powers or privileges not possessed by individuals or unlimited partnerships," and as excluding "all municipal corporations and public institutions owned or controlled by the State." This is merely a definition of the word "corporation" as used in that article, and cannot be further extended; hence, it has little persuasiveness in showing that this is a private corporation. The section itseslf excludes municipal corporations, and there is authority for holding that drainage districts are quasi municipal corporations. The sounder view, in our opinion, is that a drainage district is neither a private corporation or association, nor is it either a municipal corporation or a public institution owned or controlled by the State. It is an organization not within the contemplation of the convention when the article was framed, an organization for which the Constitution has made no express provision, and against the creation of which there is no inhibition. It is a governmental agency, an unincorporated community, organized for a specified and limited public purpose under the police power of the State.

[8, 9] (b) It is also claimed that the drainage act is a special law, and in violation of section 63, article 4, which prohibits the General Assembly from enacting any special or

private law for creating private corporations. There can be little doubt that the drainage act is not a special or private law. In *Ex Parte Settle, supra,* this court determined that a statute which provides for a special trial justice in all counties in the State having a population greater than three hundred inhabitants per square mile, as shown by the United States census, is constitutional. It was shown that there was only one county in the State, Alexandria, which has a population so dense, but this court determined that the fact that a law applies only to certain territorial districts does not render it a special law and, hence, unconstitutional, provided it applies to all districts precisely similarly situated, and to all parts of the State where like conditions exist, and that laws may be made to apply to a class only, although that class may be in point of fact a small one, provided that the classification be reasonable and not arbitrary, and the law be made to apply to all of the persons belonging to the class without distinction; and that the number of inhabitants in a county is a basis for a valid classification. If the statute applies throughout the State and to all persons and property within the class specified and the classification is reasonable and not arbitrary, such a statute is not special but general. There are statutes in the State containing special provisions with reference to granting charters to banks and trust companies, insurance companies, co-operative associations, corporations without capital stock, transportation companies and other public service corporations, companies organized for planting and propagating oysters, and perhaps others, which differ in material particulars from statutes for the granting of charters and the organization of ordinary business corporations—that is to say, the legislature has classified corporations. These statutes are none the less general laws simply because they contain special provisions applying to particular classes.

In this case, the drainage act applies to the entire State,

without any qualification whatever, its purpose being (to quote from the title and the first section) "to promote the public health, convenience and welfare by leveeing, ditching and draining the wet, swamp and overflowed lands of the State, and providing for the establishment of levee or drainage districts," etc. Such a law is general because it clearly applies to all persons and to all lands in all parts of the State which can be improved by drainage.

[10, 11] (c) It is claimed that the act violates section 156-a of article 12, which provides that "the State Corporation Commission shall be the department of government through which shall be issued all charters, or amendments or extensions thereof, for domestic corporations;" and "through which shall be carried out all of the provisions of this Constitution and the laws made in pursuance thereof, for the creation, visitation, supervision, regulation and control of corporations chartered by or doing business in this State." As to this point, we might very well conclude that so much of the act as provides that the board of drainage commis·sioners shall be a body corporate and possess such powers as usually pertain to corporations, might be rejected as surplusage, for it is perfectly clear, under the general rules for the construction of such statutes as well as from the very next paragraph in the section, that this provision adds nothing whatever to the powers conferred upon such boards, and that no power whatever is conferred except the specific powers granted by the various sections of the act. The act itself in detail prescribes the entire authority and jurisdiction of the board of drainage commissioners. *Keystone Drainage District* v. *Drainage District,* 121 Ark. 13, 180 S. W. 216. This, however, is immaterial, because section 156-a has no relation whatever to public corporations, or to the governmental agencies created by the State. It refers to private corporations which individuals have the right to organize upon complying with the statutes conferring such

right. The organization provided for by this statute is not created at the will of the individuals desiring to create such an organization. The act contains thirty-seven sections, provides for the necessary procedure with great particularity; among other things for the filing of a petition signed by a majority of the resident landowners in a proposed drainage district, or by the owners of three-fifths of all the land which will be affected by or assessed for the expense of the proposed improvements, in the office of the clerk of the circuit court of any county in which a part of the lands are located, specifying the reasons for desiring the organization, and asking for the appointment of a board of viewers to examine the land described, for notice to all persons interested, etc. The report of the viewers must show, among other things, whether the proposed drainage is practicable or not, whether it will benefit the public health or any public highway, or be conducive to the general welfare of the community, and whether the improvement proposed will benefit the lands sought to be benefited. Upon the filing of this preliminary report, the circuit court, if the report is unfavorable and the court approves it, must dismiss the petition at the cost of the petitioners; if the report is favorable, the court must entertain it and fix a date for the hearing. After proper notice to all interested, upon the date of the hearing all pertinent facts may be considered, and if the facts required by the act as prerequisite to the organization of the district appear, the court shall declare the preliminary establishment of the district and designate its name and number. The right of appeal is given to any person claiming to be injured. After this preliminary establishment of the district, the court refers the report of the board of viewers to them to make a complete survey, with plans and specifications. After such complete survey, and the assessment of damages and proper classification of the land, a final report must be made, and another opportunity given

the landowners to file objections in writing, and then, after
full opportunity for hearing and the settlement of all of the
details with due regard to the rights and interests of all
the parties, it is provided that, "if in the opinion of the
court the cost of construction, together with the amount of
damages assessed is not greater than the benefits that will
accrue to the lands affected, the court shall confirm the said
final report of the board of viewers, and shall declare the
said drainage district to be finally established, and shall
approve the survey and plans therefor." Leave is given for
reopening the proceedings for the correction of errors, and
any party may appeal. After the drainage district has been
declared finally established, then the court is required to
appoint three persons, to be designated as "The Board of
Drainage Commissioners of .......... District, Number
......of............County," and they are given power
to carry out and fully execute all of the plans for the pro-
ject. The money is to be provided by the landowners bene-
fited by the improvement, in proportion to the benefits re-
ceived, collected by the county treasurer, and used only for
the establishment and maintenance of the drainage district.

Such an organization as this could not be created by the
State Corporation Commission under its authority to grant
charters, for under section 154 of the Constitution, "no
charter shall be granted, amended, or extended, by special
act, nor shall authority in such matters be conferred upon
any tribunal or officer, except to ascertain whether the ap-
plicants have, by complying with the requirements of the
law, entitled themselves to the charter, amendment or ex-
tension applied for, and to issue, or refuse, the same ac-
cordingly." That is to say, in issuing the ordinary charter
of a business or other private corporation, the commission
simply ascertains whether the statutes have been complied
with, and, if so, has no discretion to refuse, but must issue
the charter; whereas, in the organization provided for by

the drainage act, many questions of fact must be judicially ascertained by the circuit court, and the creation of the organization depends upon the judicial determination of these necessary facts.

We are not without express authority upon this question. *In re Dexter-Greenfield Drainage District,* 21 N. M. 286, 154 Pac. 387, involved the construction of section 6 of article 11 of the Constitution of New Mexico, which is substantially similar to section 156-a of the Constitution of Virginia. The New Mexico Constitution provided that all domestic corporations shall be organized by and through the Corporation Commission; and in that case it is said: "The court, in the first place, does not organize the corporation, but merely sits in judgment as a judicial tribunal to ascertain that certain required facts and conditions exist. The statute thereupon organizes the corporation." And again the court said: "A more conclusive reason for denying the appellant's proposition arises out of the very terms of the section of the Constitution, *supra*. The grant of power and jurisdiction to the State Corporation Commission as to the organization of corporations is limited to domestic corporations. We do not understand the words 'domestic corporations,' as used in the section, to include all corporations which are local in character, that is to say, corporations organized under the laws of the State. At the time of the adoption of this section of the Constitution, we had in the State various other kinds of corporations which were domestic in the sense that they were organized under the law of the State, but which were evidently not intended by the Constitution makers to be included within the jurisdiction of the State Corporation Commission."

As in New Mexico, so here, the drainage districts have no charter and require none. The statute itself, by force of its terms, declares that when certain facts are judicially ascertained, a corporation shall be deemed to have been

created. The statute creates it upon the determination by the circuit court that certain facts exist. The power and jurisdiction committed to the State Corporation Commission to issue charters to domestic corporations must have been intended only to include such domestic corporations as require, under the law, the issuance of charters to the applicants, and do not include the organization of governmental agencies of a class like drainage districts. Such districts are communities wherein the landowners are by statute united (or incorporated) and, for the betterment of such communities vested with specified powers, some of which are like the powers usually vested in municipal corporations, but they have little similarity to corporations which are voluntarily organized for some private purpose, which are owned or controlled by their stockholders or members.

[12] 3. It is urged that sections 29 and 32 of the drainage act violate the Virginia Constitution (article 12, section 170). Section 29 provides for the ascertainment of the total cost of the improvement, including damages awarded, to be paid to the owners of the land, all incidental expenses, a reasonable attorney's fee to be fixed by the court, and an amount sufficient to pay the necessary expense of maintaining the improvement for a period of three years, etc., which shall be assessed against the lands in the names of the owners thereof in the district. These assessments are made liens upon the land, second only to State and county taxes, and all recorded and docketed existing liens, are to be collected by the county treasurer as other taxes are collected, and the lands may be sold if the assessments are not paid. Section 32 provides for the issuance of bonds of the drainage district and for the levying of assessments upon the lands in the drainage district for the payment of such bonds. These sections are said to violate that section of the Constitution, and this presents the most serious question in the case.

The pertinent part of section 170 reads thus: "No city

or town shall impose any tax or asssesment upon abutting landowners for street or other public local improvements, except for making and improving the walkways upon then existing streets, and improving and paving then existing alleys, and for either the construction, or for the use of sewers and the same when imposed shall not be in excess of the peculiar benefits resulting therefrom to such abutting landowners.  Except in cities and towns, no such taxes or assessments, for local public improvements, shall be imposed on abutting landowners."

Under the previous Constitution, before that section became effective, special assessments upon abutting land-owners for local improvements were permitted in Virginia, and were held not to violate the existing requirements respecting equality and uniformity of taxation. *Sands* v. *City of Richmond,* 31 Gratt (72 Va.) 371, 31 Am. Rep. 742; *Richmond, etc., Co.* v. *Lynchburg,* 81 Va. 473; *Violett* v. *Alexandria,* 92 Va. 561, 23 S. E. 909, 31 L. R. A. 382, 53 Am. St. Rep. 825.  Under section 170, however, such local assessments by cities and towns are now clearly limited to assessments "for making and improving the walkways upon then existing streets, and improving and paving then existing alleys, and for either the construction or for the use of sewers."  It is here claimed that section 170 prohibits assessments upon owners of land located within drainage districts, and the question is not free from difficulty.

In order, however, to construe the section intelligently, we must consider the supposed evil which the framers of the Constitution were endeavoring to eliminate.  Drainage districts were not provided for in Virginia at that time, but assessments upon abutting landowners in cities and towns for street and other local improvements were frequently made, and it was claimed that the unlimited power to impose such assessments upon abutting landowners was an evil.  It was this which the section undertook to regulate

and limit. The debates in the convention indicate that it was feared by some that the authorities in control of thickly settled communities outside of cities and towns might undertake to levy such assessments upon owners of lands abutting on the county roads, and thus undertake to improve the county roads by a system which public sentiment in the cities had apparently condemned. For this reason the last clause of section 170, reading: "Except in cities and towns no such taxes or assessments for local public improvements shall be imposed upon abutting landowners," was added. The subjects under consideration were assessments for the ordinary and necessary municipal improvements, and the use of the word "such" in that clause is significant.

[13] The synonyms of "such" are, "like, similar, of that kind, of the like kind." (Soule.) "Such" is defined by Webster as "representing the object as already particularized in terms which are not mentioned." *State* v. *Estep*, 66 Kan. 416, 71 Pac. 859. "Such" is a descriptive and relative word, and refers to the last antecedent, unless the meaning of the sentence would thereby be impaired. *Summerman* v. *Knowles*, 33 N. J. Law 202. The word refers to what has been specified, and means the same as has been theretofore mentioned. *Warner Elevator Mfg. Co.* v. *Houston* (Tex. Civ. App.), 28 S. W. 408. It means identical with or similar to something which has been already specified or implied. Now the assessments which had been immediately theretofore mentioned in the section were assessments for the usual and customary municipal improvements, clearly specified or indicated in the preceding paragraph, and it is assessments like these which the clause prohibits the counties from levying against abutting landowners.

[14] In this connection we might consider the technical meaning of the word "abutting," as used in that clause. The assessments under the drainage act are not assessed against

"abutting" owners as a class, but assessed against all land-
owners whose lands within the drainage district are bene-
fited, and no assessments can be made upon landowners
simply because their lands abut or are merely adjacent to
the district, however great the benefit to them may be. The
prohibition, it will be noted, is against assessments against
"butting" landowners, and in such discussion it must be
always remembered that it is not enough to suggest a con-
stitutional restraint. If there be doubt, that doubt must be
resolved in favor of the constitutionality of the act under
consideration.

[15] 4. It is claimed that the drainage act violates article
1, sections 6 and 11, and article 4, section 58 of the Virginia
Constitution, and the fourteenth amendment of the Fed-
eral Constitution.

Section 6 of article 1 of the Virginia Constitution (Bill
of Rights), expressly authorizes taxation and the damaging
of property for public uses by consent of the representatives
of the people, and in this respect sustains the act.

Section 11 of the same article provides that no person
shall be deprived of his property without due process of
law, and that in controversies respecting property, trial by
jury ought to be held sacred; and section 58 expressly
authorizes private property to be taken or damaged for
public uses, requiring just compensation therefor; while
the portion of the fourteenth amendment relied on pro-
vides that no State shall deprive any person of his prop-
erty without due process of law.

[16, 17, 18] Similar questions have been many times raised
and have all been frequently decided. The drainage act is
sustained under the police power which is expressly reserved
in the Constitution of Virginia, in section 159, which pro-
vides that "the exercise of the police power of the State shall
never be abridged." The authorities show that the courts
generally are indisposed to suffer the police power to be

abridged or defeated by constitutional limitations. It is possible, of course, for the Constitution to impose such limitations, but they must be clearly imposed or there are no such limitations. The police power is not paramount to the Constitution, but its free exercise is never interfered with unless plainly in conflict therewith. *Shenandoah Lime Co.* v. *Governor,* 115 Va. 874, 80 S. E. 753, Ann. Cas. 1915 C, 973. The power of the State not only embraces regulations designed to promote public convenience and general prosperity, but also such regulations as are designed to promote the public health, public morals, or the public safety. *Chicago, B. & Q. R. Co.* v. *Illinois,* 200 U. S. 592, 26 Sup. Ct. 341, 50 L. Ed. 609, 4 Ann. Cas. 1175.

In *Eubank* v. *Richmond,* 226 U. S. 142, 57 L. Ed. 158, 33 Sup. Ct. 77, 42 S. R. A. (N. S.) 1123, Ann. Cas. 1914 B. 192, we find this as to the police power: "That power we have defined, as far as it is capable of being defined by general words, a number of times. It is not susceptible of circumstantial precision. It extends, we have said, not only to regulations which promote the public health, morals and safety, but to those which promote the public convenience or the general prosperity. (*Chicago, B. & Q. R. Co.* v. *Illinois,* 200 U. S. 561, 50 L. Ed. 596, 26 Sup. Ct. 341, 4 Ann. Cas. 1175.) And further, 'it is the most essential of powers, at times the most insistent, and always one of the least limitable of the powers of government.' (*District of Columbia* v. *Brooke,* 214 U. S. 138, 149, 53 L. Ed. 941, 945. 29 Sup. Ct. 560). But necessarily it has its limits and must stop when it encounters the prohibition of the Constitution. A clash will not, however, be lightly inferred. Governmental power must be flexible and adaptive. Exigencies arise, or even conditions less peremptory, which may call for or suggest legislation, and it may be a struggle in judgment to decide whether it must yield to the higher considerations expressed and determined by the provisions of

the Constitution. *Hoble State Bank* v. *Haskell,* 219 U. S. 104, 31 Sup. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487. * * * But in all the cases there is the constant admonition, both·in their rule and examples, that when a statute is assailed as offending against the higher guaranties of the Constitution, it must clearly do so to justify the courts in declaring it invalid."

In a recent case in which like questions were raised as to the Nebraska drainage act (Rev. St. 1913, sec. 1797, et seq.), this is said by the Supreme Court of the United States: "We find no ground for a contrary view as to the nature of the authorized enterprise. We have repeatedly said that the provisions of the fourteenth amendment, embodying fundamental conceptions of justice, cannot be deemed to prevent a State from adopting a public policy for the irrigation of arid lands or for the reclamation of wet or overflowed lands. States may take account of their special exigencies, and when the extent of their arid or wet lands is such that a plan for irrigation or reclamation according to districts may fairly be regarded as one which promotes the public interest, there is nothing in the Federal Constitution which denies to them the right to formulate this policy, or to exercise the power of eminent domain in carrying it into effect." *O'Neill* v. *Leamer,* 239 U. S. 253, 36 Sup. Ct. 58, 60 L. Ed. 265, citing many cases.

It is claimed that the case cited (*Eubank* v. *City of Richmond, supra*), is authority for the proposition contended for by the appellant. We cannot so construe it. The ordinance of the city of Richmond which was there held to violate the fourteenth amendment of the United States Constitution required the committee on streets, upon the request of the owners of two-thirds of the abutting property, to establish a building line on the side of the square on which their property fronts, not less than five nor more than thirty feet from the street line. The vice of that ordi-

nance, as condemned by the Supreme Court of the United States, was that the property owners were permitted to determine the extent of the use that the other owners should make of their lots, and that against such restriction the objecting owners were impotent, and that there was no discretion left in the committee on streets. This point the court emphasized, saying that "one set of owners determine not only the extent of the use but the kind of use the other set of owners may make of their property," and that it was unnecessary to construe the power of the city to establish a building line, or to regulate the structure or height of the buildings.

In the case in judgment, the authority to establish the drainage district is not in those who desire its establishment, but the jurisdiction is vested in the courts, and only in the courts after the judicial determination of certain facts, the existence of which the legislature deemed so clearly promotive of the public interest as to justify the creation of the district.

We have no doubt of the correctness of the decree of the trial court.

*Affirmed.*