# CRIMINAL CASES.

## Wytheville.

### OBEY ANTHONY v. COMMONWEALTH.

Argued before Judge Chichester took his seat.

June 11, 1925.

1. INTOXICATING LIQUORS—*General Reputation of Accused as Violator of the Prohibition Law—Constitutionality of the Provision.*—Section 73, chapter 345, Acts of 1922, of the State prohibition law (section 41½, chapter 407, Acts 1924) does not violate the Constitution of Virginia nor the due process and equal protection clause of the fourteenth amendment to the Constitution of the United States.

2. CONSTITUTIONAL LAW—*Power of the Legislature.*—The General Assembly is vested with absolute power to pass any law not in conflict with the State or Federal Constitution.

3. CONSTITUTIONAL LAW—*Presumption in Favor of Constitutionality.*— Every act is presumed to be constitutional and will be held valid unless it plainly violates some provision of the Constitution.

4. CONSTITUTIONAL LAW—*Reasonable Doubt of Constitutionality.*—A reasonable doubt as to the constitutionality of an act must be solved in favor of its validity.

5. CONSTITUTIONAL LAW—*Statutes—Propriety and Wisdom of a Statute.*— Whether legislation is wise and proper is not for the court, but for the legislature to determine.

6. INTOXICATING LIQUORS—*Reputation of Accused—Section 8 of the Constitution of Virginia.*—Section 8 of the Constitution of 1902, providing that accused has a right to demand to be confronted with the accusers and witnesses is not violated by the provision of the prohibition act admitting evidence of the reputation of accused as a violator of the prohibition laws. Such evidence is not hearsay but substantive evidence. The statute simply changes the rules of evidence so that the Commonwealth may put in evidence the general reputation of the accused, in prohibition cases, just as the accused himself is permitted to do in all prosecutions against him.

7. INTOXICATING LIQUORS—*Reputation of Accused—Conviction not Based on Reputation Alone.*—The provision of the prohibition act permitting evidence of the general reputation of the accused as a violator of the prohibition laws does not authorize a conviction, without any evidence of the commission of the offense charged, upon proof that the accused has the reputation of being a violator of the prohibition laws, but simply makes such evidence relevant and admissible, to be considered along with the other evidence in the case.

8. INTOXICATING LIQUORS—*Reputation of Accused as Violator of the Prohibition Laws—Local or Special Laws.*—Section 73, chapter 345, Acts 1922 (section 41½, chapter 407, Acts 1924), providing for the admission of evidence as to the general reputation of accused as a violator of the prohibition laws is not a private or local law, or a special act, within the meaning of sections 63 and 64 of the Constitution of 1902. Although it applies only to a class, namely, violators of the prohibition laws, yet the classification is reasonable and not arbitrary, and includes all persons throughout the State who are similarly situated. Such an act is not special, but general.

9. INTOXICATING LIQUORS—*Due Process of Law—Equal Protection of the Law—Reputation of Accused as Violator of the Prohibition Acts.*—Section 73, of chapter 345, of Acts 1922 (section 41½ of chapter 407, Acts 1924), providing that it shall be competent in a prosecution for any offense against the prohibition laws to prove the general reputation of the defendant as a violator of the prohibition laws, is not repugnant to the due process and equal protection clause of the fourteenth amendment to the Constitution of the United States.

10. DUE PROCESS OF LAW—*Definition.*—What is due process of law is not easily defined. Generally speaking, the "law in its regular course of administration through courts of justice is due process."

11. CONSTITUTIONAL LAW—*Equal Protection of the Law—Evidence.*—Equal protection of the law does not guarantee to all persons in the United States, or in a single State, the benefits of the same laws and the same remedies. Every legislature may, subject to constitutional limitations, prescribe what evidence shall be received in the courts of its own jurisdiction.

12. STATUTES—*Classification—Fourteenth Amendment.*—The fourteenth amendment to the Constitution of the United States does not forbid the passage by the legislature of a law which applies to a class only, provided the classification be reasonable and not arbitrary, and applies alike to all persons similarly situated. Legislation may be limited either in the objects to which it is directed, or by the territory within which it is to operate. Whether the classification is reasonable is a question primarily for the legislature. It is presumed to be necessary and reasonable, and the courts will not substitute their judgment for that of the legislature, unless it is

clear that the legislature has not made the classification in good faith.

13. REASONABLE DOUBT—*Definition—Instructions.*—In the instant case the court instructed the jury that "a doubt to justify an acquittal must be a reasonable doubt. It must not be a doubt that is merely chimerical or conjectural, it must be based upon the evidence, or lack of evidence, or that is suggested by the evidence. It must be a doubt of material fact or facts necessary for the jury to believe to find a verdict of conviction and not of immaterial and nonessential circumstances. If, after an impartial consideration of all the evidence in the case, you have an abiding conviction of the truth of the charge you are satisfied beyond all reasonable doubt. The jury must not go beyond the evidence to hunt up doubts, nor, on the other hand, must the jury go beyond the evidence to hunt up inference of guilt."

*Held:* That substantially the same instruction was given and approved in *Horton's Case*, 99 Va. 855, 38 S. E. 184. And besides, in the instant case, the court, at the request of the accused, gave at least three other instructions on reasonable doubt.

14. CRIMINAL LAW — *Circumstantial Evidence — Instructions — Reasonable Theory of Innocence.*—In the instant case the accused asked for an instruction to the effect that if there was any theory of the case upon which the accused might be innocent the jury must adopt such theory and acquit the accused. The trial court inserted the word "reasonable" before the word "theory."

*Held:* That this was a proper amendment of the instruction.

15. INTOXICATING LIQUORS—*Conviction of Having Possession of Still, Appliances and Mash—Evidence Sufficient to Sustain Verdict.*—In the instant case accused was convicted under an indictment charging that he unlawfully had in his possession a still and fermenters, and other appliances connected with a still and used in connection therewith, and also had in his possession mash and other substances capable of being used in the manufacture of ardent spirits. It appeared from the evidence that the officers of the law found a still site and mash and lard cans concealed, some on the accused's premises and some just across accused's line; and there was other incriminating evidence together with testimony that the reputation of accused as a violator of the prohibition law was bad. Accused denied that he knew anything of the mash found on his place, and attempted to explain the other incriminating circumstances.

*Held:* That the credibility of witnesses and the weight of the testimony were questions for the jury and they having found the accused guilty, the verdict could not be disturbed.

Error to a judgment of the Circuit Court of Louisa county.

*Affirmed.*

The opinion states the case.

*Gordon & Gordon* and *W. E. Bibb*, for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile, Assistant Attorney-General,* and *Lewis H. Machen, Assistant Attorney-General,* for the Commonwealth.

WEST; J., delivered the opinion of the court.

Obey Anthony was convicted under an indictment charging that he unlawfully had in his possession a still and fermenters, and other appliances connected with a still and used in connection therewith, and also had in his possession mash and other substances capable of being used in the manufacture of ardent spirits, and sentenced to jail for three months and to pay a fine of $50.00. This writ of error is to that judgment.

The accused assigns as error the action of the court— (1) In permitting witnesses to testify that he had the reputation of being a violator of the prohibition laws; (2) in giving instructions A and B for the Commonwealth; (3), in amending instruction No. 1 offered by the accused; and (4), in refusing to set aside the verdict of the jury as contrary to the law and the evidence and unsupported by the evidence.

[1] The accused claims that section 73 of the State prohibition law (section 73, chapter 345, Acts 1922, now section 41½, chapter 407, Acts 1924), violates the provisions of the Virginia Constitution and the due process and equal protection clause of the fourteenth amendment to the Constitution of the United States.

Section 73 of the prohibition law reads as follows: "It shall be competent in a prosecution for any offense against the prohibition laws of the State to prove the general reputation of the defendant as a violator of the prohibition laws."

Sections 8, 63 and 64 of the Constitution of Virginia read in part, as follows:

Section 8. "* * * That in all criminal prosecutions a man hath a right to demand the cause and nature of his accusation, to be confronted with the accusers and witnesses, to call for evidence in his favor and to a speedy trial by an impartial jury * *."

Section 63. "The General Assembly shall not enact any local, special or private law in the following cases * * * 3. Regulating the practice in or the jurisdiction of, or changing the rules of evidence in any judicial proceedings or inquiry before the courts or other tribunals, * * *."

Section 64. "In all cases enumerated in the last section * * * the General Assembly shall enact general laws. Any general law shall be subject to amendment or repeal, but the amendment or partial repeal thereof shall not operate directly or indirectly to enact, and shall not have the effect of the enactment of a special, private or local law."

[2-5] The rules which are observed by this court in passing upon the constitutionality of a State statute are well established. The General Assembly is vested with absolute power to pass any law not in conflict with the State or Federal Constitution. Every act is presumed to be constitutional and will be held valid, unless it plainly violates some provision of the Constitution. A reasonable doubt as to the constitutionality of the act must be solved in favor of its validity. Whether the legislation is wise and proper is not for the court, but for

the legislature, to determine. *Ex Parte Settle*, 114 Va. 715, 77 S. E. 496; *Pine and Scott* v. *Commonwealth*, 121 Va. 822, 93 S. E. 652; *Strawberry, etc.,* v. *Starbuck*, 124 Va. 77, 97 S. E. 362.

[6, 7] There is no merit in the contention that the clause of the prohibition law under consideration violates section 8 of the Virginia Constitution because it makes available to the Commonwealth hearsay evidence and denies to the accused the right to be confronted by and to cross-examine the witnesses whose testimony is used against him.

It is substantive evidence, to-wit, the general reputation of the accused as a violator of the prohibition laws and not hearsay evidence that is involved. The statute simply changes the rules of evidence so that the Commonwealth may put in evidence the general reputation of the accused, in prohibition cases, just as the accused himself is permitted to do in all prosecutions against him. The accused has the same opportunity in the one case that the Commonwealth has in the other to introduce evidence of his general reputation in rebuttal. Besides, he can cross-examine the witnesses to test their opportunity for knowledge of his reputation. The statute does not authorize a conviction, without any evidence of the commission of the offense charged, upon proof that the accused has the reputation of being a violator of the prohibition laws, but simply makes such evidence relevant and admissible, to be considered along with the other evidence in the case.

[8] The contention that the clause in question is repugnant to sections 63 and 64 of the Virginia Constitution, *supra*, is likewise without merit.

It is clear that the statute involved here is not a private or local law, or a special act, within the meaning of these sections of the Constitution. True, it applies only

to a class, namely, violators of the prohibition laws, but the classification is reasonable and not arbitrary and includes all persons throughout the State who are similarly situated. Such an act is not special, but general. Being a general act, the legislature's authority to thus change the common law rules of evidence is beyond question. *Strawberry, etc.,* v. *Starbuck,* 124 Va. 79, 97 S. E. 362.

The case of *Ex Parte Settle,* 114 Va. 715, 77 S. E. 496, involved the validity of a statute which it was claimed violated section 63 of the Constitution of Virginia, prohibiting the enactment of any local, special or private law. Keith, P., speaking for the court, said:

"It is insisted on behalf of the petitioner that the act is unconstitutional because it is special or class legislation prohibited by section 63 of the Constitution of this State, in that it applies only to the county of Alexandria; that it is repugnant to section 52 of the Constitution, which provides, among other things, that 'no law shall be revived or amended with reference to its title, but the act revived or the section amended shall be reenacted and published at length;' and third, that it is repugnant to section 87 of the Constitution, which provides that 'the judiciary department shall consist of a Supreme Court of Appeals, circuit courts, city courts, and such other courts as are hereinafter authorized.'

"It is true that the act applies only to the county of Alexandria, that being the only county in the State which has a population of three hundred or more to the square mile. But the fact that a law applies only to certain territorial districts does not render it unconstitutional, provided, it applies to all districts and all persons who are similarly situated, and to all parts of the State where like conditions exist. Laws may be made to apply to a class only, and that class may be in point

of fact a small one, provided the classification itself be reasonable and not an arbitrary one, and the law be made to apply to all of the persons belonging to the class without distinction."

In *Martin's Executors* v. *Commonwealth*, 126 Va. 612, 102 S. E. 77, 80, 724, the law is stated thus: "Constitutional prohibitions against special legislation do not prohibit classification. A general law in its simplest form embraces all persons and places within the State, but varying circumstances often render it impossible to apply the same rule everywhere and to everybody. But the classification must not be purely arbitrary. It must be natural and reasonable, and appropriate to the occasion. There must be some such difference in the situation of the subjects of the different classes as to reasonably justify some variety of rule in respect thereto. Though an act be general in form, if it be special in purpose and effect, it violates the spirit of the constitutional prohibition. An evasion of the prohibition 'by dressing up special laws in the garb and guise of statutes' will not be permitted. 1 Dill. on Mun. Corp. (5th ed.), section 147, *et seq.;* 1 Lewis' Sutherland on Stat. Construction (2d ed.), section 200. But the necessity for and the reasonableness of classification are primarily questions for the legislature. If any state of facts can be reasonably conceived that would sustain it, that state of facts at the time the law was enacted must be assumed. 1 Dill. Mun. Corp. (5th ed.), section 146; *Polglaise* v. *Commonwealth*, 114 Va. 850, 865, 76 S. E. 897."

The same or similar principles are laid down in *Commonwealth* v. *United Cigarette Machine Co.*, 120 Va. 835, 92 S. E. 901; *Commonwealth* v. *The Ferries Co.*, 120 Va. 827, 92 S. E. 804; *Strawberry* v. *Starbuck, supra.*

The Kentucky prohibition law, in section 15, of chap-

ter 33, of the Acts of the Kentucky General Assembly, 1922, provides as follows: "In any prosecution or proceeding for any violation of this act, the general reputation of the defendant or defendants for moonshining, bootlegging, or being engaged in the illicit manufacture of, or trade in, intoxicating liquors, shall be admissible in evidence against said defendant or defendants." The validity of this statute was sustained by the Court of Appeals of Kentucky in *Keith* v. *Commonwealth*, 197 Ky. 362, 247 S. W. 42, 43.

[9] The further contention that the act in question is repugnant to the due process and equal protection clause of the fourteenth amendment to the Constitution of the United States is also without merit.

[10] What is due process of law is not easily defined. Generally speaking, the "law in its regular course of administration through courts of justice is due process."

[11] Equal protection of the law does not guarantee to all persons in the United States, or in a single State, the benefits of the same laws and the same remedies. Every legislature may, subject to constitutional limitations, prescribe what evidence shall be received in the courts of its own jurisdiction.

[12] The fourteenth amendment to the Constitution of the United States does not forbid the passage by the legislature of a law which applies to a class only, provided the classification be reasonable and not arbitrary, and applies alike to all persons similarly situated. Whether the classification is reasonable is a question primarily for the legislature. It is presumed to be necessary and reasonable and the courts will not substitute their judgment for that of the legislature unless it is clear that the legislature has not made the classification in good faith.

In 12 C. J., page 1202, section 970, we find this: "Due

process of law in a criminal case requires a law creating or defining the offense, a court of competent jurisdiction, accusation in due form, notice and opportunity to answer the charge, trial according to the settled course of judicial proceedings, and a right to be discharged unless found guilty.   However, no particular form of procedure is required, and where the conditions just enumerated are fulfilled, there is no violation of the guaranty of due process of law, regardless of whether an appellate court may approve of the verdict of the jury and the judgment based on it.   The law by which the question of due process is determined is the law of the jurisdiction where the offense was committed and the trial is had.   Within constitutional limits, the State and Federal governments have full control over criminal procedure within their respective jurisdictions."

In the same volume, at pages 1205, 1206, section 979, the law is stated thus: "Generally speaking, the legislature may, without denial of due process of law, establish and alter the rules relating to the admission and effect of evidence in criminal cases; and the same is true as to the powers of Congress in prescribing rules of evidence for trials in the Federal courts.   If the rule of evidence prescribed by statute is reasonable in itself, and does not deprive the accused person of reasonable opportunity to make his defense or to give in evidence of all the facts relating to the issue, it is due process of law within the constitutional guaranties    *    *    *."

In *Brown* v. *New Jersey*, 175 U. S. 172, 20 S. Ct. 77, 44 L. Ed. 119, Mr. Justice Brewer, speaking for the court, said: "It is said that the equal protection of the laws was denied because the defendant was not given the same number of peremptory challenges that he would have had in a trial before an ordinary jury.   In the latter case he would have been entitled under the

statute to twenty peremptory challenges, but when a struck jury is ordered he is given only five.   But that a State may make different arrangements for trials under different circumstances of even the same class of offenses has been already settled by this court.  Thus, in *Missouri* v. *Lewis*, 101 U. S. 22 [25 L. Ed. 989], in certain parts of the State an appeal was given from a final judgment of a trial court to the Supreme Court of the State, while in other parts this was denied; and it was held that a State might establish one system in one portion of its territory and a different system in another, and that in so doing there was no violation of the fourteenth amendment.   So, in *Hayes* v. *Missouri*, 120 U. S. 68 [7 S. Ct. 350, 30 L. Ed. 578], it appeared that a certain number of peremptory challenges was allowed in cities over 100,000 inhabitants, while a less number was permitted in other portions of the State.   It was held that that was no denial of the equal protection of the laws, the court saying, page 71: 'The fourteenth amendment to the Constitution of the United States does not prohibit legislation which is limited either in the objects to which it is directed, or by the territory within which it is to operate.   It merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed.' * *"

Mr. Justice Bradley, speaking of the fourteenth amendment in *Missouri* v. *Lewis*, 101 U. S. 31, 25 L. Ed. 989, said: "We might go still further and say, with undoubted truth, that there is nothing in the Constitution to prevent any State from adopting any system of laws or judicature it sees fit for all or any part of its territory.   If the State of New York, for example, should see fit to adopt the civil law and its method of procedure for New York city and the surrounding coun-

ties, and the common law and its method of procedure for the rest of the State, there is nothing in the Constitution of the United States to prevent its doing so.· This would not, of itself, within the meaning of the fourteenth amendment, be a denial to any person of the equal protection of the laws. If every person residing or being in either portion of the State should be accorded the equal protection of the laws prevailing there, he could not justly complain of a violation of the clause referred to. For, as before said, it has respect to persons and classes of persons. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by the other persons or other classes in the same place and under like circumstances."

In *Hayes* v. *Missouri*, 120 U. S. 68, 7 S. Ct. 350, 30 L. Ed. 578, Mr. Justice Field, speaking for the court, said: "The fourteenth amendment to the Constitution of the United States does not prohibit legislation which is limited either in the objects to which it is directed, or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed."

In *Twining* v. *New Jersey*, 211 U. S. 78, 29 S. Ct. 14, 53 L. Ed. 97, speaking for the court, Mr. Justice Moody said: "Due process requires that the court which assumes to determine the rights of parties shall have jurisdiction (*Pennoyer* v. *Neff*, 95 U. S. 714, 733 [24 L. Ed. 565]; *Scott* v. *McNeal*, 154 U. S. 34 [14 S. Ct. 1108, 38 L. Ed. 896]; *Old Wayne Life Association* v. *McDonough*, 204 U. S. 8 [27 S. Ct. 236, 51 L. Ed. 345]), and that there shall be notice and opportunity for hearing given the parties (*Hovey* v. *Elliott*, 167 U. S. 409 [17 S. Ct. 841, 42 L. Ed. 215]; *Roller* v. *Holly*, 176 U. S. 398 [20 S. Ct. 410,.

44 L. Ed. 520]), and see *Londoner* v. *Denver*, 210 U. S. 373, [28 S. Ct. 708, 52 L. Ed. 1103]). Subject to these two fundamental conditions, which seem to be universally prescribed in all systems of law established by civilized countries, this court has up to this time sustained all State laws, statutory or judicially declared, regulating procedure, evidence and methods of trial, and held them to be consistent with due process of law. *Walker* v. *Sauvinet*, 92 U. S. 90 [23 L. Ed. 678]; *Re Converse*, 137 U. S. 624 [11 S. Ct. 191, 34 L. Ed. 796]; *Caldwell* v. *Texas*, 137 U. S. 692 [11 S. Ct. 224, 34 L. Ed. 816]; *Leeper* v. *Texas*, 139 U. S. 462 [11 S. Ct. 577, 35 L. Ed. 225]; *Hallinger* v. *Davis*, 146 U. S. 314 [13 S. Ct. 105, 36 L. Ed. 986]; *McNulty* v. *California*, 149 U. S. 645 [13 S. Ct. 959, 37 L. Ed. 882]; *McKane* v. *Durston*, 153 U. S. 684 [14 S. Ct. 913, 38 L. Ed. 867]; *Iowa Central R. Co.* v. *Iowa*, 160 U. S. 389 [16 S. Ct. 344, 40 L. Ed. 467]; *Lowe* v. *Kansas*, 163 U. S. 81 [16 S. Ct. 1031, 41 L. Ed. 78]; *Allen* v. *Georgia*, 166 U. S. 138 [17 S. Ct. 525, 41 L. Ed. 949]; *Hodgson* v. *Vermont*, 168 U. S. 262 [18 S. Ct. 80, 42 L. Ed. 461]; *Brown* v. *New Jersey*, 175 U. S. 172 [20 S. Ct. 77, 44 L. Ed. 119]; *Bolln* v. *Nebraska*, 176 U. S. 83 [20 S. Ct. 287, 44 L. Ed. 382]; *Maxwell* v. *Dow*, 176 U. S. 581 [20 S. Ct. 448, 44 L. Ed. 597]; *Simon* v. *Craft*, 182 U. S. 427 [21 S. Ct. 836, 45 L. Ed. 1165]; *West* v. *Louisiana*, 194 U. S. 258 [24 S. Ct. 650, 48 L. Ed. 965]; *Marvin* v. *Trout*, 199 U. S. 212 [26 S. Ct. 31, 50 L. Ed. 157]; *Rogers* v. *Peck*, 199 U. S. 425 [26 S. Ct. 87, 50 L. Ed. 256]; *Howard* v. *Kentucky*, 200 U. S. 164 [26 S. Ct. 189, 50 L. Ed. 421]; *Rawlins* v. *Georgia*, 201 U. S. 638 [26 S. Ct. 560, 50 L. Ed. 899, 5 Ann. Cas. 783]; *Felts* v. *Murphy*, 201 U. S. 123 [26 S. Ct. 366, 50 L. Ed. 689].

Among the most notable of these decisions are those sustaining the denial of jury trial both in civil and criminal cases, the substitution of information for indict-

ments by a grand jury, the enactment that the posses-sion of policy slips raises a presumption of illegality, and the admission of the deposition of an absent witness in a criminal case."

In *Fong Yue Ting* v. *United States*, 149 U. S. 698, 13 S. Ct. 1016, 37 L. Ed. 905, Mr. Justice Gray, speaking for the court, said: "The provision which puts the bur-den of proof upon him of rebutting the presumption arising from his having no certificate, as well as the re-quirement of proof, 'by at least one credible white wit-ness, that he was a resident of the United States at the time of the passage of this act,' is within the acknowl-edged power of every legislature to prescribe the evi-dence which shall be received, and the effect of that evi-dence in the courts of its own government. *Ogden* v. *Saunders*, 12 Wheat. 213, 262, 349 [6 L. Ed. 606]; *Pillow* v. *Roberts*, 13 How. 472, 476 [14 L. Ed. 228]; *Cliquot's Champagne*, 3 Wall. 114, 143 [18 L. Ed. 116]; *Ex Parte Fisk*, 113 U. S. 713; 721 [5 S. Ct. 724, 28 L. Ed. 1117]; *Holmes* v. *Hunt*, 122 Mass. 503, 516-519 [23 Am. Rep. 381]. The competency of all witnesses, without regard to their color, to testify in the courts of the United States, rests on acts of Congress, which Congress may at its discretion modify or repeal. * *"

In Dillon, Municipal Corporations (5th ed.), section 146, the law is stated thus: "* * * the legislature . may determine what difference in situation, circum-stances and needs call for a difference of class, subject to the supervision of the courts, as the final inter-preters of the Constitution, to see that it is actually classification, and not special legislation under that guise. The presumption is always in favor of the legis-lative command, and it must prevail unless clearly transgressing the constitutional prohibition. If the dis-tinctions are genuine and not merely artificial and irrele-

vant means of evading the constitutional prohibition, the courts must declare the classification valid, though they may not consider it to be on a sound basis. The test is not wisdom but good faith in the classification."

Having under consideration the question of the effect of the equal protection clause of the fourteenth amendment upon class legislation by the State, the Supreme Court of the United States, in *Lindley* v. *National Carbonic Gas Co.*, 220 U. S. 78, 31 S. Ct. 340, 55 L. Ed. 369, Ann. Cas. 1912C, 160, said: "A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. * * When the classification * * is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

It is not contended that there was any lack of good faith on the part of the legislature in enacting the statute in question. It being a matter of common knowledge that a strong minority of the people are opposed to the prohibition laws, the legislature doubtless felt that a change in the rules of evidence was necessary for their proper enforcement.

The accused has failed to show that the classification is arbitrary or unreasonable.

This innovation in the common law rules of evidence is no greater than that of other statutes which have been held not to violate the due process clause of the fourteenth amendment. In *Twining* v. *New Jersey, supra,* the court held that this clause did not require that a person be exempted from self incrimination in the

courts of a State which has not adopted the policy of such exemption.

In *West* v. *Louisiana*, 194 U. S. 258, 24 S. Ct. 650, 48 L. Ed. 965, the court, in construing a State statute authorizing the reading of depositions of witnesses in criminal cases, held that the statute did not deny the accused due process of law within the meaning of the Federal Constitution.

The assignments of error relating to giving and amending instructions will be considered together. The instructions under review are as follows:

A. "The court instructs the jury that a doubt to justify an acquittal must be a reasonable doubt. It must not be a doubt that is merely chimerical or conjectural, it must be based upon the evidence, or lack of evidence, or that is suggested by the evidence. It must be a doubt of material fact or facts necessary for the jury to believe to find a verdict of conviction and not of immaterial and nonessential circumstances.

"If after an impartial consideration of all the evidence in the case you have an abiding conviction of the truth of the charge you are satisfied beyond all reasonable doubt.

"The jury must not go beyond the evidence to hunt up doubts, nor on the other hand must the jury go beyond the evidence to hunt up inference of guilt."

B. "The court instructs the jury that if they believe from the evidence beyond a reasonable doubt that the defendant, Obey Anthony, on or about the 20th day of July, 1923, did unlawfully have in his possession mash capable of being used in the manufacture of ardent spirits, they will find him guilty and will fix his punishment at a fine of not less than $50.00 nor more than $500.00 and confinement in jail not less than one month nor more than six months."

No. 1. "The court instructs the jury that in this case, where the evidence is purely circumstantial, that in order to warrant a conviction the incriminatory circumstances, if any, must be inconsistent with the innocence of the accused and the burden being upon the Commonwealth to prove the guilt of the accused beyond a reasonable doubt the court further instructs the jury that if there is any reasonable theory of the case upon which the accused may be innocent the jury must adopt such theory and acquit the accused."

[13, 14] Instruction A is substantially the same as instruction No. 12 which was given on the subject of reasonable doubt and approved in *Horton's Case*, 99 Va. 855, 38 S. E. 184. Besides, the court gave in the instant case, at the request of the accused, at least three other instructions on reasonable doubt. There was ample evidence to support instruction B, and it was properly given. The court properly amended instruction No. 1, given at the instance of the accused, by inserting the word "reasonable" immediately preceding the word "theory."

A careful consideration of all the instructions given in the case satisfies us that every right of the accused was fully protected and that these assignments are without merit.

[15] This brings us to the last assignment of error, based upon the action of the court in refusing to set aside the verdict of the jury as contrary to the law and the evidence and without evidence to support it.

The facts, from the viewpoint of the Commonwealth, are these: In July, 1923, the sheriff of Louisa county and other officers, while in search of a still, found a still site in the woods about 500 yards from the home of the accused. Nine barrels of mash, two of which were made of cider and the balance of a mixture of meal, sugar and

yeast, were hidden in the rick of wood, cut and piled near the still site. Over fifty lard cans full of mash made of plums and cider were also found concealed in three blinds. Thirty-two of them were in one blind located on the land of the accused, and the remainder of them, the nine barrels of mash and the still site were located just across the accused's line on the land of one Brooks. There was a path leading from the mash to the still site. Up in the woods, fifty yards nearer to the home of the accused, they found a barrel containing about a quart of ardent spirits. There was also an old still site over on the accused's property, a considerable distance from the place where the mash was found.

Brooks lived up on the hill on the other side of the still site first referred to, but the road going near the still site did not lead to his house. The officers did not have to cross the road in going from the still site and mash to the home of the accused. In going from the still site to his house the officers observed smut on several bushes on the path leading from the still site to the road which leads to the home of the accused. They tracked a wheelbarrow from the still site up the path leading from the still site to the road near the accused's home. Upon arrival at his home they found a wheelbarrow with smut on it. They also found in the garage fifty empty lard cans, the same size and color as those in which the mash was found, and fifty empty barrels like those which contained the mash. Under the floor of his stables was a pile of jugs, two of which smelled of corn whiskey. In a pit under the stables they found more empty jugs, five or six lanterns and about one hundred empty 100 pound sugar bags.

Two witnesses testified that the reputation of the accused as a violator of the prohibition law was bad.

.The accused testified that he had nothing to do with.

the mash found on his place, and knew nothing about it until the officers showed it to him; that the barrels and casks found at his house were given to him by his father; that the lard cans and sugar bags were given to him by the Federal officers who some time prior raided a still which was being operated by one Slim; that the wheelbarrow found at house belonged to Brooks; that he did not know anything about the stuff found on Brooks' place until it was shown him by the officers; that he had but few apples in 1925, and made only two gallons of cider, and that the road through his property was used by the public generally.

The credibility of the witnesses and the weight of the testimony were questions for the jury. They have found the accused guilty, and we cannot say the verdict is without evidence to support it.

*Affirmed.*